UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
**BERNADINE T. GRIFFITH**                     )
                                              )
       **Plaintiff,**    )
                                              )
v.                                            )   C.A. No. 03-CV-12573-EFH
                                              )
**ONEBEACON INSURANCE COMPANY,**              )
**ONEBEACON AMERICA INSURANCE**               )
**COMPANY, MICHAEL A. SISTO, and**            )
**KAREN ALLEN HOLMES**                        )
                                              )
       **Defendants.**   )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO CONDUCT RULE 35 EXAMINATION**

      Defendants OneBeacon Insurance Company, OneBeacon America Insurance Company, Michael A. Sisto, and Karen Allen Holmes (collectively, the "defendants") submit the following memorandum in support of their Motion to Conduct Rule 35 Examination of Plaintiff Bernadine T. Griffith ("Griffith" or the "plaintiff"). The defendants respectfully request this Court issue an order providing for the examination of Griffith by Harvey Waxman, Ph.D. ("Dr. Waxman"), a suitably licensed or certified examiner at a time mutually convenient to Griffith and Dr. Waxman.

      As set forth more fully below, a Rule 35 mental examination is warranted because Griffith has affirmatively placed her mental state in controversy by alleging that her termination caused continuing mental injuries that have medically prevented her from mitigating her

damages.

## II.     Procedural History

On or about December 22, 2003, Griffith filed a Complaint against the defendants. She later filed a second, nearly identical Complaint against the defendants on March 29, 2003. At the Court's instruction and after dismissal of the second Complaint, Griffith filed an eleven count Amended Complaint on August 18, 2004 incorporating the allegations of the second suit into the first. Specifically, Griffith alleges: 1) that the defendants discriminated against her because of her race, color, age, and disability; 2) that the defendants retaliated against her for opposing the discrimination; 3) that the defendants created a hostile work environment; 4) that the corporate defendants breached their contract with her; and 5) that the combination of the defendants' unlawful treatments and acts culminated in her being psychologically disabled.

In support of Griffith's allegations of wrongful treatment, she contends in her Amended Complaint that the alleged wrongful conduct by the defendants "[o]ften [caused] Ms. Griffith [to bring] her work-related stress home, which affected the enjoyment of her family and husband. She was not able to rest in the evenings. She found herself anxious, nervous, exhausted and fearful." Amended Complaint, p. 11 ¶ 57. The environment was allegedly so extreme that in June 2000, Griffith required a twenty-three day Family Medical Leave Act ("FMLA") leave of absence so that she could be "psychologically ready to return to work." Exhibit A, June 23, 2000 note from John Garrison, Ph.D. According to Griffith's Amended Complaint, the defendants alleged treatment "has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for … mental anguish, loss of enjoyment of life, and other non-pecuniary losses." Amended Complaint, p. 24, ¶ 156; p. 28, ¶ 167; p. 30 ¶ 176; p. 34, ¶ 197; p. 37, ¶ 208. Griffith

essentially argues that the defendants' alleged treatment created in her a psychological disability from which she suffered both during and after her employment.

The defendants hereby move for an order permitting them to conduct a Rule 35 mental examination of Griffith by Dr. Waxman, a duly licensed and qualified practitioner. *See* Exhibit B, Affidavit of Leah M. Moore. The contemplated examination would take place during one or two sessions at Dr. Waxman's office totaling up to eight hours at a time mutually convenient to the plaintiff and Dr. Waxman. *See id.* at ¶ 3. Dr. Waxman's mental examination would pertain to the following subject areas: work history, psychiatric history, medical history, personal history, family history, developmental history, mental status, nature and extent of psychiatric disability (if any), and appropriate accommodation(s) to psychiatric disability (if any). *See id.* at ¶ 4. Dr. Waxman's examination will not include the taking of blood tests or x-rays. *See id.*

**III.    Argument**

    A.    Standard for Rule 35(a) Motion

"Rule 35(a) is to be construed liberally in favor of granting discovery." *Eckman v. Univ. of R.I.*, 160 F.R.D. 431, 433 (D.R.I. 1995). A mental or physical examination of a party is appropriate where a party's mental or physical condition is in controversy and good cause exists for ordering the examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964); *Cabana v. Forcier*, 200 F.R.D. 9, 12 (D. Mass. 2001). "A matter may be placed 'in controversy' in a civil action by the nature of the claim or defense." *Schlagenhauf*, 379 U.S. at 119. In fact, the "in controversy" requirement is satisfied where the plaintiff's mental or physical condition relates directly to the proof of her claim. *Id.*; *Dasilva v. Gagliardo*, 2003 WL 23094879 *2 (Mass.

3

Super. Dec. 30, 2003)[1]. First Circuit courts typically grant a Rule 35 motion in several situations including an allegation of a specific mental or psychiatric injury or disorder or where there is unusually severe emotional distress. *See Flanagan v. Keller Prod., Inc.*, 2001 WL 1669379 *1 (D.N.H. 2001) (applying the *Schlagenhauf* standard). Further, where a plaintiff asserts a mental injury, a Rule 35(a) examination may be warranted on the basis of the pleadings alone. *See Cabana*, 200 F.R.D. at 12 (citing *Schlagenhauf*, 379 U.S. at 119 and *Cody v. Marriott Corp.*, 103 F.R.D. 421,422(D.Mass. 1984) (holding pleadings alone are sufficient to satisfy burden when plaintiff in negligence action asserts mental or physical injury); *see also, Doe v. Senechal*, 431 Mass. 81, 83 (2000) (pleadings supported conclusion that defendant's condition as father of plaintiff's child was "in controversy"). "There is no time limit on when a motion for physical or mental examination can be made." 8 A Wright & Miller, § 2234 p. 474. As expert discovery has yet to be completed, the defendants are well within this requirement.

      B.    <u>Griffith Affirmatively Placed Her Mental State in Controversy</u>

Griffith's claim of emotional distress is clearly articulated on the face of her Complaint. In attempting to recover for "mental anguish, loss of enjoyment of life, and other non-pecuniary losses," Griffith alleges emotional distress. Moreover, Griffith has failed to concede that her emotional damages are of the "garden variety;" to the contrary, she claims that her depression began in 1996 or 1997 and is ongoing. *See* Exhibit C, Griffith deposition pp. 44; *cf. Flanagan*, 2001 WL 1669379 at *1 (holding mere conclusory allegations in pleadings and claim for "garden variety" mental anguish insufficient to establish plaintiff's mental condition was in controversy).

---

[1] As is noted in the Reporters Notes to Rule 35 of the Massachusetts Rules of Civil Procedure, the Massachusetts version of Rule 35 "tracks Federal Rule 35." "Because the state courts have had more experience with physical and mental examinations than have the federal courts, state decisions are referred to when appropriate in the discussion of Rule 35." 8A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2231 (2d ed. 1994). Accordingly, reference is made to decisions interpreting Rule 35 of both the Federal and Massachusetts Rules of Civil Procedure to serve as guidance.

Griffith essentially contends that the alleged continued mistreatment by the defendants *caused* her to suffer stress, mental illness and related emotional and psychological abnormalities. For these conditions, Griffith took near maximum doses of anti-depressants and anti-psychotic medications including Zoloft and Alprazolam, commonly known as Xanax. Further, upon review of her incomplete medical records, a clinician at Griffith's medical provider, the Lahey Clinic, indicated that she appeared to be either bipolar or suffering from depression with psychotic features. Exhibit 1 to Exhibit B, notes from Griffith's clinician. *See Cabana*, 200 F.R.D at 12 ("although the allegations do not expressly place Cabana's mental condition 'in controversy,' the report of his neuropsychologist clearly does"). As such, Griffith's mental state is "in controversy." *See id.*, *cf Cody*., 103 F.R.D. at 422-23 (denying motion for mental exam for garden variety emotional distress damages as distinguished from a situation where the plaintiff claims "physical, emotional, mental stress, and mental and psychiatric injuries"); *see gen., Smith v. Koplan*, 215 F.R.D. 11, 13-14 (D.D.C. 2003) (plaintiff required to submit to independent medical examination because she alleged physical, emotional, and economic damages as a result of the alleged discrimination); *Gattegno v. Pricewaterhouse-Coopers*, 204 F.R.D. 228, 231 (D.Conn. 2001) (employee placed mental state in controversy by alleging she suffered mental anguish, physical and emotion distress, humiliation, and embarrassment); *Usher v. Lakewood Eng'g. & Mfg. Co.*, 158 F.R.D. 411, 412 (D.Ill. 1994) (employment discrimination plaintiff put her mental state into controversy and mental examination was warranted when she claimed intangible mental harm as part of her damages and had seen a clinical psychologist for depressive episodes); *Cabana*, 200 F.R.D. at 12.; *Lahr v. Fulbright & Jaworski*, 164 F.R.D. 204, 209 (N.D. Tex. 1996).

5

Further, in her deposition testimony, Griffith alleged that she suffered from depression during and as a result of her employment as well as after her termination, such that she could not mitigate her damages. Such evidence is more than sufficient to place her mental state "in controversy" for purposes of a Rule 35(a) examination. *Thiessen v. General Elec. Capital Corp.*, 178 F.R.D. 568, 570-71 (D.Kan. 1998). According to Griffith, the depression she suffered after the termination was so severe, her psychologist would not permit her to search for work.

> "Q.[The defendants]: At some point after you were notified of your termination, did you being to look for employment?
> A. [Griffith]: No.
> Q.: Why not?
> A.: Because I was ill … I was disabled and my doctor wrote that I was disabled as far as working at that time." pp. 39-40.

> "A.: What I said was, at the time I was terminated, Dr. Garrison [the plaintiff's psychologist] said that I was not able to work. The diagnosis of me being severely depressed happened much earlier. … '97 [or] '96. …
> Q.: So that after the time you were terminated, you were told that the depression was so severe that it was debilitating?
> A.: Yes, and Dr. Garrison wrote a letter saying I was not able to work." pp. 43-44.

> "Q.: At the end of that six-to-eight month period [after your termination] when you were taking the medicine, did you look for work at that time?
> A.: No.
> Q.: Is there any particular reason why?
> A.: I was still not able to.
> Q.: Was that something your doctor had told you?
> A.: Well, he hadn't released me. …
> Q.: Was it your understanding that he had to release you in order for you to begin a search for employment?
> A.: Correct." pp.59-60.

Moreover, as part of her case for discrimination and retaliation, Griffith alleges that she was granted FMLA leave and an FMLA certification form was submitted for a leave of absence due to her psychological inability to be present at work and a "stress-related problem" that was "currently disabling for her employment." S*ee* Exhibit A and Exhibit D, June 12, 2000 letter from John Garrison, Ph.D. Thus, Griffith's mental condition relates directly to proof of her

6

retaliation and damage claims, and a Rule 35 examination is warranted to investigate these diagnoses further. S*ee Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003) (holding that former employee placed her mental condition in controversy by alleging she was "hospitalized and placed under the care of a physician" as a result of her alleged discriminatory termination).

Finally, Griffith alleges that the conduct of the defendants "*continues to cause, and will cause* [her] to suffer substantial damages for … mental anguish, loss of enjoyment of life, and other non-pecuniary losses." Amended Complaint, p. 24, ¶ 156; p. 28, ¶ 167; p. 30 ¶ 176; p. 34, ¶ 197; p. 37, ¶ 208, emphasis added.  Where a plaintiff alleges mental damages which are purportedly continuing in nature, she places her mental condition "in controversy" for purposes of a Rule 35 examination. *Cf. Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958) (no examination ordered because "plaintiff was not seeking damages for any present suffering but only for past physical injury and emotional disturbance"); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D.Conn. 1994) ("since plaintiff claims he suffers ongoing psychiatric harm, the plaintiff has placed his psychiatric state in controversy"); *Bridges v. Eastman Kodak Co*., 850 F. Supp. 216, 221 (S.D.N.Y. 1994) (no examination ordered where plaintiffs did not claim ongoing mental injury).

Where  "the severity of plaintiff's emotional problems has been placed on [the] record and will play a central role in [the] case[;] [t]his alone supplies the necessary 'good cause' for a Rule 35(a) mental examination." *Eckman*, 160 F.R.D. at 434.  The record is clear that Griffith goes well beyond a claim for emotional distress; she is further claiming mental and psychiatric injuries.  In ruling against a request for a Rule 35(a) mental examination, the *Cody* court distinguished this exact type of situation, stating that when a plaintiff references mental and

7

psychiatric injuries, the plaintiff affirmatively places her mental condition in controversy. 103 F.R.D. at 423. Moreover, because Griffith's mental state is directly related to her ability to prove her claim for retaliation and to recover damages, she has placed her mental state "in controversy" for purposes of the ordering of a Rule 35(a) mental examination.

        C.      <u>Defendants have Good Cause to Obtain a Mental Examination of Griffith</u>

Due to the *subjective* nature of the plaintiff's suggestion that the defendants caused her to suffer from a depressive state as a result of their alleged treatment during her employment from which she still suffers that continues to prevent her from obtaining employment, the defendant will be at an unfair disadvantage if they are not permitted to have their own expert evaluate such conditions, particularly in light of the notes from a health care professional after examining Griffith that indicates she may be either bipolar or psychotic. *See Cabana*, 200 F.R.D. at 12 (holding notes from a plaintiff's psychologist sufficient to warrant mental examination). For this reason as well, the defendants have "good cause" for a Rule 35 mental examination of the plaintiff.

"One purpose in granting a request for a psychiatric examination pursuant to Rule 35 is to preserve the equal footing of the parties to evaluate the plaintiff's mental state." *Duncan*, 155 F.R.D. at 25. Further, the information gleaned from a mental examination of the plaintiff would be "highly relevant to the issues that are central to the plaintiff's case" – specifically plaintiff's claims for retaliation and continuing psychological damages. S*ee Cody*,103 F.R.D. at 423; *Eckman,*160 F.R.D. at 434; *Dasilva*, 2003 WL 23094879 at *2. In addition, there is no other discovery means by which the defendants could obtain such independent information. *See Doe*, 431 Mass. at 83; *Schlagenhauf*, 379 U.S. at 118. Simply questioning the plaintiff's medical experts would be insufficient because "mere cross-examination of plaintiff's expert would be an

8

insufficient test of truth." *Dasilva*, 2003 WL 23094879 at *2. Moreover, mental examinations are routinely authorized and do not pose a serious risk of harm, pain, or undue embarrassment to the plaintiff. *See id.; Duncan*, 155 F.R.D. at 25 (mental examination ordered where mental condition in controversy); *Jansen v. Packaging Corp. of* America, 158 F.R.D. 409, 410 (D.Ill. 1994) (employer established good cause when former employee placed mental state in controversy by claiming damages for emotional distress that was unlimited and ongoing). Finally, the proposed mental examination does not include tests of uncertain validity or value. *See Doe*, 431 Mass. at 84; *Dasilva*, 2003 WL 23094879 at *2. Accordingly, the defendants have the requisite good cause to conduct a mental examination of the plaintiff.

**IV.    Conclusion**

For the foregoing reasons, the defendants respectfully request this Court issue an order allowing the defendants' Motion to Conduct Rule 35 Examination, providing for the examination of the plaintiff by Dr. Harvey Waxman, at the offices of Dr. Waxman, at a time mutually convenient to the plaintiff and Dr. Waxman.

        Respectfully submitted,

        ONEBEACON INSURANCE CO.,
        ONEBEACON AMERICA INSURANCE CO.,
        MICHAEL A. SISTO, and
        KAREN ALLEN HOLMES

        By their attorneys


        /s/ Leah M. Moore_____
        Keith B. Muntyan (BBO # 361380)
        keithmuntyan@morganbrown.com
        Leah M. Moore (BBO # 658217)
        lmoore@morganbrown.com
        MORGAN, BROWN & JOY, LLP
        200 State Street
        Boston, MA 02109
        617-523-6666 (phone)


Dated: May 2, 2005


## CERTIFICATE OF SERVICE

    I, Leah M. Moore, hereby certify that on this 2nd day of May 2005, I caused a true and correct copy of the foregoing to be served via first class mail upon Kathleen J. Hill, Esq., Attorney for Plaintiff, Law Office of Kathleen J. Hill, 92 State Street, Suite 700, Boston, Massachusetts 02109, being the address designated by said attorney for service of all pleadings.

        /s/ Leah M. Moore_____
        Leah M. Moore