UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.: 03 CV 12573 EFH

|  |  |
|---|---|
| BERNADINE T. GRIFFITH<br>    Plaintiff<br><br>vs.<br><br>ONEBEACON INSURANCE COMPANY,<br>ONEBEACON AMERICA INSURANCE<br>COMPANY, MICHAEL A. SISTO, and<br>KAREN ALLEN HOLMES<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### OPPOSITION TO DEFENDANT'S MOTION TO CONDUCT RULE 35 EXAMINATION

The plaintiff, Bernadine T. Griffith, opposes the Defendants' Motion To Conduct Rule 35 Examination on the grounds that the plaintiff's mental condition is not an element of this employment discrimination action; the plaintiff's request for emotional damages is nothing more than "garden variety" emotional distress arising out of employment discrimination; the plaintiff has never averred a psychological disability in this action or below in the Massachusetts Commission Against Discrimination, as represented in defendants' Motion[1]; the defendants have failed to show that the plaintiff placed her mental condition "in controversy" and have not satisfied the "good cause" substantive requirements within the meaning of *Schlangenhauf v. Holder*, 379 U.S. 104, 85 S. Ct. 234 (1964); the defendants,

---

[1] The defendants represented in their Memorandum: "Specifically, Griffith alleges: 1) that the defendants discriminated against her because of her race, color, age, and disability; 2) that the defendants retaliated against her for opposing the discrimination; 3) that the defendants created a hostile work environment; 4) that the corporate defendants breached their contract with her; and 5) that the <u>combination of the defendants' unlawful treatments and acts culminated in her being psychologically disabled.</u>" Memorandum of Law in Support of Defendants' Motion to Conduct Rule 35 Examination, Procedural History, Page 2.

1

who subjected the plaintiff to fourteen hours of deposition taking, have failed to show what relevant mental condition, if any, is in controversy and what time period, if any, the plaintiff is alleged to have suffered the alleged "psychological disability" warranting a present mental examination; the proposed mental examination to be given five to eight years after the charges of discrimination is not relevant because the plaintiff is not receiving psychological counseling for prior acts of discrimination, she has never been under the care of a psychiatrist, nor the subject of a mental examination; the defendants' have failed to comply with procedural requirements set forth in Rule 35(a) specifying the time, place, manner, conditions and scope of the proposed mental examination; and, this Honorable Court should decline to consider this discovery motion because it is not accompanied by a certification, as required by LR 7.1 (a)(2) and LR 37.1 (b).

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION

This Honorable Court should deny the defendants' Motion To Conduct Rule 35 Examination because the plaintiff did not make a claim for a psychological disability. The plaintiff, who was diagnosed with heart disease in 1994 has consistently represented that her claims arise out of a heart disability and, therefore, she has not placed her mental condition into controversy. The plaintiff's request for emotional damages is clearly set forth in her Complaint as a "garden variety" claim; she made no claim for an alleged psychic injury or psychiatric disorder. See *Sabree v. United Brotherhood of Carpenters & Joiners, Local No. 33*, 126 F.R.D. 422, 426 (D.Mass. 1989) (holding that the plaintiff did not place her mental condition at issue where she did not allege psychic injury or a psychiatric disorder.)

After subjecting the plaintiff to fourteen hours of deposition taking, the defendants have supported their Motion with <u>one page</u> of the plaintiff's deposition transcript, which summarily implies that the plaintiff suffered from depression, at some point in time. This inference, however, is nothing more than a conclusory statement describing an alleged mental condition. It does not demonstrate that the plaintiff affirmatively placed her mental condition in controversy. Thus, the defendants have not satisfied the "in controversy" and "good cause" substantive requirements of Rule 35, as pertaining to the plaintiff's alleged mental condition for which the proposed mental examination is sought. *See Schlagenhauf v. Holder*, 379 U.S. at 104, 118, 85 S.Ct. 234, 243 (1964) (ruling that Rule 35 is not satisfied by "mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination").

More specifically, the defendants have failed to show how the alleged mental condition is casually related to the plaintiff's claims of employment discrimination. The plaintiff did not plead that she suffers from depression arising out of the employer's unlawful discriminatory acts and, therefore, she has not put the alleged mental condition into controversy. Although the plaintiff produced <u>all</u> of her medical records from 1994 to date, the defendants only attached one isolated medical note (which is actually one page of a three page medical report) that was written on May 23, 2000, the day the plaintiff received emergency care treatment for her heart condition after her employer placed her on probation. At this time, Dr. Seek, a psychologist, who *assisted* in providing emergency care treatment on May 23, 2000, proposed that she be examined for bi-polar depression most likely due to the level of emotional distress the plaintiff was apparently suffering on that day. The fact remains no other medical report in the plaintiff's entire medical

3

history supports this faulty statement. The May 23, 2000 medical note has no relevance in this case because the plaintiff does not suffer from bi-polar depression, as the plaintiff informs in her deposition. See Exhibit A, Deposition of Bernadine T. Griffith, Volume IV, page 516. Consequently, the May 23, 2000 medical note merely documented that the plaintiff received psychological counseling from the apparent mental injury suffered in the spring of 2000, but the psychological counseling was not ongoing and ceased shortly after her termination, in March of 2001.

In *Cody*, the Court reasoned that although Rule 35 (a) is to be construed liberally:

> "none of the rules of Federal Civil Procedure 'should . . . be expanded by disregarding plainly expressed limitations. The 'good cause' and 'in controversy' requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue [her] own mental . . . condition are not to be automatically ordered merely because the person' has made a claim of emotional distress. See *Schlagenhauf*, 379 U.S. at 121, 85 S.Ct. at 244. 'To hold otherwise would mean that such examinations could be ordered routinely' in cases where there is a claim of damages for emotional distress. See *Schlagenhauf*, 379 U.S. at 121 - 122, 85 S.Ct. at 244. Plaintiff has not placed her mental condition 'in controversy' by asserting a claim of damages for physical and emotional distress. Defendants' reliance on *Schlagenhauf* to press this point is misplaced. Defendants make reference to a portion of that opinion which suggests that a plaintiff in a negligence action places his mental or physical condition in controversy by asserting a mental or physical injury. *Schlagenhauf*, 379 U.S. at 199, 85 S.Ct. at 243. The short answer to the defendants' line of reasoning is: this is not a negligence action; this is an employment discrimination action." See *Cody v. Marriott Corp.*, (D.Mass. 1984) 103 F.R.D. 421, 422-423.

In sum, the defendants have not satisfied the 'in controversy' substantive requirement of Rule 35 because they failed to show that the alleged mental condition "relates directly to the proof or defense of the underlying cause of action." *Dove v. Senechal*, 431 Mass. 78, 82, (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), cert. denied, 531 U.S. 825 (2000).

The fact that a plaintiff may continue to suffer from the consequences of past adverse unlawful discriminatory acts is to be expected, particularly when the plaintiff continues to be unemployed and suffers from the loss of contractual benefits denied the employee, a hardship

4

which the employer has caused the plaintiff in this case. To date, the employer refuses to acknowledge that the plaintiff, a vested-employee who is now sixty-years old, is entitled to receive retirement benefits, at any given point in time. Even though the plaintiff is **not** receiving psychological counseling for her loss of retirement benefits, she should not be subjected to a mental examination just because she intends to testify about the emotional affects of lost retirement benefits she has sustained, as she properly averred in her Complaint. The *Coca-Cola Bottling Co. of Puerto Rico* Court succinctly explains:

> "The language of Rule 35 is permissive in that it provides that while the court "may" order a party to submit to a physical examination, it may do so "only on motion for good cause shown." Thus clearly the granting or denying of a motion for a physical examination rests in the sound discretion of the trial court. *Bucher v. Krause*, 7 Cir., 1952, 200 F.2d 578, 584, certiorari denied 1953, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404. The court in the case at bar denied the motion on the basis of the plaintiff's assertion that he was not seeking damages for any present suffering but only for past physical injury and emotional disturbance, and hence a physical examination would be useless since it would not show the extent of the injury he had suffered in the past from which he had wholly recovered. The ground for denying the motion is certainly sound. But the defendant contends that nevertheless over its objection the court permitted the plaintiff to testify: "I always felt bad. At this very moment when I remember that thing I feel bad." In view of the plaintiff's disclaimer of damages for any present injury, the court admitted this testimony only for whatever value it might have to show the severity of the plaintiff's past suffering." *See Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d. 149, 153 (1st Cir. 1958).

Finally, the defendants have not procedurally satisfied the requirements of Rule 35 because they have not "specif[ied] the time, place, manner, conditions, and scope of the examination." Fed.R.Civ.P. 35(a).

WHEREFORE, the plaintiff respectfully requests the Honorable Court issue an order denying the defendants' Motion To Conduct Rule 35 Examination, and order any other relief deemed just and fair in resolution of this issue.

Respectfully submitted,

BERNADINE T. GRIFFITH
By her Attorney,

Date: May 16, 2005

_____
Kathleen J. Hill        BBO# 644665
LAW OFFICE OF KATHLEEN J. HILL
92 State Street, Suite 700
Boston, MA 02109
617.742.0457 (O) / 617.742.4508 (F)

## CERTIFICATE OF SERVICE

I, Kathleen J. Hill, certify that I served a true and accurate copy of the foregoing Plaintiff's Opposition to Defendants' Motion To Conduct Rule 35 Examination on the counsel of record: *Keith B. Muntyan and Leah M. Moore*, of Morgan, Brown & Joy, Two Hundred State Street, 11th Floor, Boston, Massachusetts 02109 by pre-paid U.S. Mail and facsimile on this 16th day of May 2005.

_____
Kathleen J. Hill

Exhibit A

Case 1:03-cv-12573-EFH   Document 46   Filed 05/16/2005   Page 7 of 9

# Griffith
## vs.
## OneBeacon, et al.

## Deposition of Bernadine T. Griffith

### Volume IV

April 28, 2005
pp 454-590

**Jones Reporting**
COMPANY

Two Oliver Street, Suite 804
Boston, MA  02109
617-451-8900
info@jonesreporters.com
www.jonesreporters.com

Page 515

1  know, when I took that, I felt no pain.
2    Q. Were you taking that medicine before you
3  took the leave?
4    A. No.
5    Q. Do you recall having a nosebleed sometime
6  between May 23, 2000, and June 1, 2000?
7    A. I would have to say a slight nosebleed.
8  They were frequent, and it's usually with the
9  dizziness and the --
10   Q. Do you recall --
11   A. Excuse me. Go ahead.
12   Q. Do you recall having the slight nosebleed
13  between May 23rd and June 1st?
14   A. The nosebleed?
15   Q. Yes, ma'am.
16   A. Yes.
17   Q. When did you have it?
18   A. Between those -- between that period.
19   Q. How many times did you have them?
20   A. I couldn't tell you.
21   Q. Ten times?
22   A. That's speculating. I couldn't tell you.
23   Q. 10 times?
24   A. I can't give you a number.

Page 516

1    Q. Do you know if it was less than 100?
2    A. I would say that.
3    Q. Do you know if it was less than 10?
4    A. May 31st through June 1st?
5    Q. May 23rd, the day you went to the emergency
6  room and after receiving your warning, until June
7  1st.
8    A. Five times maybe.
9    Q. Ms. Griffith, have you ever heard a
10  physician use the word "bipolar" when describing
11  you?
12   A. No.
13   Q. Have you ever heard a psychologist use the
14  word "bipolar" when describing you?
15   A. No.
16   Q. Do you ever if anyone in your family has
17  been diagnosed as bipolar?
18   A. I know of no one in my family that has been
19  diagnosed as bipolar.
20   Q. Have you ever heard a physician use the
21  words "paranoid psychosis" when describing you?
22   A. No.
23   Q. Have you ever heard a psychologist use the
24  words "paranoid psychosis" when talking about you?

Page 517

1    A. No.
2    Q. Do you know if anyone in your family has
3  been diagnosed with paranoid psychosis?
4    A. I know of no one in my family that has been
5  diagnosed with that.
6    Q. When you were talking to Dr. Garrison during
7  your leave about being upset about your situation at
8  work, did you tell him you were having nosebleeds?
9    A. I don't recall.
10   Q. Do you recall if you were having nosebleeds
11  between June 1st and June 23rd?
12   A. No, I don't recall.
13   Q. Do you recall if you were having chest pains
14  between June 1st and June 23rd?
15   A. Yes, I recall them.
16   Q. Were you having them?
17   A. Yes, toward the beginning of my sick leave.
18   Q. Do you recall if you were having
19  palpitations between June 1st and June 23rd?
20   A. Yes.
21   Q. Were you having them?
22   A. Yes.
23   Q. When were you having them?
24   A. Toward the beginning of my sick leave.

Page 518

1    Q. Did you see a physician about the fact that
2  you were having nosebleeds between June 1st and June
3  23rd?
4    A. No.
5    Q. Did you see a physician about the fact that
6  you were having palpitations between June 1st and
7  June 23rd?
8    A. No.
9    Q. Did you see a physician about the fact that
10  you were having chest pains between June 1st and
11  June 23rd?
12   A. No.
13   Q. Why not?
14   A. I saw one on -- I saw one on earlier. I
15  went to the emergency room, and I saw a physician
16  earlier.
17   Q. You went to the emergency room because you
18  were having chest pains, correct?
19   A. Yes, that was May 23rd.
20   Q. Yes, ma'am. You continued to have them and
21  you didn't go back to the hospital?
22   A. It was not on a regular basis. They
23  happened.
24   Q. On an irregular basis you were having them,