# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

BERNADINE T. GRIFFITH

      **Plaintiff,**

**v.**

ONEBEACON INSURANCE COMPANY,
ONEBEACON AMERICA INSURANCE
COMPANY, MICHAEL A. SISTO, and
KAREN ALLEN HOLMES

      **Defendants.**
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 03-CV-12573-EFH

Date: Wednesday, September 14, 2005
Time: 11:00 a.m.
Judge: The Honorable Edward F. Harrington

## JOINT PRE-TRIAL MEMORANDUM PURSUANT TO LOCAL RULE 16.5

Pursuant to Local Rule 16.5(D) of the United States District Court for the District

of Massachusetts and in compliance with the Court's Order of March 17, 2005,

Bernadine T. Griffith ("Griffith" or "Plaintiff") and OneBeacon Insurance Company

("OneBeacon"), OneBeacon America Insurance Company ("OneBeacon America"),

Michael A. Sisto ("Sisto"), and Karen Allen Holmes ("Holmes") (collectively,

"Defendants") (together with Griffith, the "Parties"), hereby submit their Joint Statement

in the above captioned matter.


**1.**     **Concise Summary of the Evidence**

      a.     Plaintiff's Summary of the Evidence

The plaintiff intends to offer evidence showing that the employer has engaged in

unlawful discriminatory employment practices on the basis of race, color, age, retaliation,

and disability via testimony of witnesses and exhibits.

b.      Defendants' Summary of the Evidence

Plaintiff is a former long-term employee of Defendant OneBeacon who began her tenure with the company in 1979.  The final four years of Plaintiff's employment, from 1996 through her termination in September 2000, are those relevant to the instant action. During those four years, Plaintiff alleges that she suffered retaliation and various forms of discrimination based upon her race, her color,[1] her status as a disabled person due to heart disease, and her age.

Plaintiff alleges that she began to suffer discriminatory treatment in 1996 at the hands of her then supervisor, Edmund Freeman ("Mr. Freeman").  Plaintiff accuses Mr. Freeman of failing to provide her with what she believes were reasonable accommodations required after undergoing bypass surgery two years prior.  She also asserts that in late October 1996, she overheard Mr. Freeman use the term "tar baby" to describe a yet-to-be assigned project many employees were trying to avoid.  Plaintiff believed this term to be a racial slur and complained to OneBeacon human resources personnel.  As a result of Plaintiff's complaint, in early November 1996, Mr. Freeman's supervisory responsibilities were removed.

Between November 1996 and November 1999, Plaintiff reported to two different supervisors who allegedly continued to discriminate and retaliate against her based upon her race, color, disability, and age. In December 1999, Plaintiff began to report directly to Defendant Holmes, and Holmes reported to Defendant Sisto.  Plaintiff continued to report to Holmes and Sisto until her termination in September 2000.  Similar to the accusations made against her three former supervisors, Plaintiff alleges that Sisto and Holmes

continued the mistreatment she suffered because of her race, color, disability, and age though she failed to identify any instance of age discrimination during her four day deposition. Despite the fact that Plaintiff alleges mistreatment at the hands of five former supervisors and the company generally, she has only named supervisors Holmes and Sisto as individual defendants.

On May 23, 2000, while she reported to Holmes and Sisto, Plaintiff was placed on a written warning due to her frequent unplanned absences noted in both her 1998 and 1999 year-end reviews as an area requiring improvement. The written warning required Plaintiff not to be absent or tardy for a period of three months and not to take vacation days without one week's advance notice. Even though she understood that a timely arrival was an element of her written warning, Plaintiff routinely reported to work fifteen minutes or more after her agreed upon 10:00 a.m. start time that had been adjusted from 8:00 a.m. to accommodate Plaintiff's heart disability. Defendant Holmes never disciplined Plaintiff for arriving to work late during the three month probationary period; to the contrary, she provided Plaintiff with a fifteen minute buffer should Plaintiff call from the road to indicate that she was running late.

Within two months of receipt of the May 2000 written warning, Plaintiff violated its terms on July 24, 2000 by calling in a vacation day on the day she intended to be absent. As a result, on July 27, 2000, Holmes and Sisto placed Plaintiff on a final written warning, again requiring that she not be absent or tardy for a period of three months and not take vacation days without one week's advance notice. At the time she received the

---

[1] Plaintiff testified that she believed discrimination on the basis of one's race and color were the same type of discrimination. As such, the only discrimination claims relate to race, age, and disability status.

final written warning, Plaintiff was told that failure to adhere to these restrictions would result in termination. Despite the forewarning, Plaintiff violated the restrictions by taking three sick days just six weeks into the three month probationary period. As a result, Plaintiff was terminated in accord with the consequences outlined in the final written warning.

According to Plaintiff, she does not intend to utilize her retirement benefits until she is 65 years of age which will not occur for at least four years. She has never contacted anyone at OneBeacon about her desire to receive retirement benefits, nor has she contacted any OneBeacon affiliate responsible for the handling of retirement benefits.

2.    **Facts Established by Pleadings or Stipulation**

a.    Plaintiff's Facts Established by Pleadings or Stipulation

In chief, the plaintiff and her witnesses are expected to testify to the facts set forth in her verified complaint: that the defendants unlawfully subjected the plaintiff to discriminatory practices over the span of seven years; that the defendants created a hostile work environment; and that the defendant's subjected the plaintiff to retaliation, including: plaintiff's supervisor remarking that she was a "tar baby"; defendants' failure to investigate the complained of racial and disability discrimination; failure to take affirmative steps to eliminate disability discriminatory practices and racially motivated discriminatory practices implemented by management and/or supervisors; the defendants breached its company promise to grant sick leave of absence; revoked plaintiff's authorized reasonable accommodations; refused to allow plaintiff's reasonable accommodation to work at home two days a week; a similar accommodation accorded

other white employees; revoked Plaintiff's authorized certified medical leave; failed to

administer fringe benefits to the Plaintiff; imposed medically restrictive job assignments

on the plaintiff; denied plaintiff access to software manuals and books pertaining to her

job; segregated plaintiff from a company break room; excluded the plaintiff from

attending informal group meetings; failed to provide plaintiff with training and admission

to programs accorded other group employees; failed to give plaintiff a $1,900.00 pay

raise that it promised; wrongfully issued warnings and sanctions against the plaintiff;

refused to provide plaintiff with record of the alleged absentee record; discharged

plaintiff from her employment; and, took retaliatory steps to prevent the plaintiff from

securing her retirement.

      b.      <u>Defendants' Facts Established by Pleadings or Stipulation</u>

      Defendants deny that there are any material issues of fact genuinely in dispute

**3.**      **<u>Contested Issues of Fact</u>**

      a.      <u>Plaintiff's Contested Issues of Fact</u>

      1.      Whether the plaintiff was able to perform and performed

satisfactorily the essential functions of her job with or without a reasonable

accommodation.

      2.      Whether the defendants failed to accommodate the plaintiff's

disability.

      3.      Whether the defendants discharged the plaintiff because of her

race, age or disability.

4.     Whether the defendants engaged in unlawful discriminatory conduct with malice and/or a reckless.

5.     Whether the defendants' discriminatory actions caused the plaintiff to suffer harm, injury and substantial damages for pecuniary losses, mental anguish, and loss of enjoyment of life.

6.     Whether the defendants intentionally treated the plaintiff differently from similarly situated coworkers who were not member of the protected classes: race, sex, and age.

7.     Whether the defendants retaliated against the plaintiff for having exercised her rights to file a charge of discrimination.

8.     Whether defendants, jointly and severally, subjected the plaintiff to the complained of unlawful discriminatory conduct.

b.     <u>Defendants' Contested Issues of Fact</u>

1.     Whether a plaintiff who sues under the ADA but not the FMLA can make out a *prima facie* case and a violation of the ADA based on a defendant's refusal to classify an absence as FMLA leave.

2.     Whether Plaintiff may offer as evidence events or occurrences which she alleges occurred more than 300 days prior to her filing any claim with the MCAD.

3.     Plaintiff has at times seemed to indicate that she will offer statistical evidence in support of a disparate treatment argument.  If such evidence is referenced in an opening statement or proffered to the jury, Defendants will object that no

proper foundation has been laid for such evidence, that it is not competent as offered, and that it must be excluded.

4.    Whether Plaintiff, who admits she has not sought any other employment since her termination by OneBeacon but claims she was capable of working, has failed to mitigate her alleged damages.

5.    Plaintiff has at times seemed to indicate that she will offer evidence at trial regarding discovery disputes and other procedural issues arising prior to trial.  If such evidence is referenced in an opening statement or proffered to the jury, Defendants will object that no proper foundation has been laid for such evidence, that it is not relevant, that it is not competent as offered, that it is solely for the Court's consideration, and that it must be excluded.

6.    Whether Supervisor Edmund Freeman's alleged reference to a particular work project as a "tar baby" should be barred from evidence, where the comment was not directed to or about plaintiff, and constitutes the sort of stray remark that courts routinely exclude from trial.

7.    Did Plaintiff have a contractual relationship with OneBeacon such that OneBeacon could be liable to Plaintiff for breach of contract?

8.    Assuming Plaintiff had a contractual relationship with OneBeacon, for what did they contract?

9.    Assuming Plaintiff had a contractual relationship with OneBeacon, did OneBeacon breach that contract when it terminated Plaintiff for her failure to abide by the July 27, 2000 final written warning?

10.     Defendants request that the Court permit them to supplement or adjust this statement of issues in light of any ruling the Court may make on their currently-pending motion for summary judgment.

**4.**     **Jurisdictional Questions**

There are no jurisdictional questions.

**5.**     **Pending Motions**

a.     Plaintiff's Questions Raised by Pending Motions

1.     Whether the defendants failed to comply with the September 14, 2004 and March 15, 2005 Discovery Order.

2.     Whether the defendants are barred from submitting evidence in their defense at the time of summary judgment and/or at trial per the March 15, 2005 Discovery Order.

3.     Whether defendants have engaged in bad-faith litigation practices when they intentionally and maliciously published plaintiff's personal data identifiers and confidential psychiatric records (Social Security Number – Exhibit A on page 284; Exhibit LL on page 1, 2, and 3; Exhibit MM on page 1; and, DOB – Exhibit W; and Exhibit UU) on PACER for four days and nights in the course of litigation, subjecting the plaintiff to identity theft, that justifies an order of sanctions under Rule 37 (b)(2), as set forth by the plaintiff on August 11, 2005 in her pray for relief.

b.    Defendants' Pending Motions

Defendants' Motion for Summary Judgment has been briefed, filed, and is awaiting hearing.

**6.    Issues of Law**

a.    Plaintiff's Issues of Law

1.    Whether the intentional treatment of the plaintiff differently from similarly situated coworkers who were not members of the protected class by implementing discriminatory practices and/or in creating a hostile work environment resulted in causing the plaintiff to suffer adverse employment consequences, in violation of Title VII, ADA, and the AEDA.

2.    Whether the defendants retaliated against the plaintiff for having exercised her rights to file a charge of discrimination and have interfered with plaintiff's exercise of her protected rights, in violation of Title VII, ADA, and the AEDA.

3.    Whether the defendants engaged in unlawful discriminatory conduct with malice and/or a reckless disregard of the plaintiff's federally protected rights under Title VII, ADA, and the AEDA.

4.    Whether defendants' breach of promise to allow plaintiff a reasonable accommodation, to give plaintiff company sick leave time, and other benefits, including retirement, caused the plaintiff to suffer harm, injury, and damages as a direct and foreseeable consequence of the defendant's breach.

5.    The plaintiff continues to object to defendants offering Dr. John Garrison records pertaining to plaintiff, as is raised in plaintiff's motion and supporting

letters pertaining to the removal and sealing of defendants' first motion for summary judgment.

6.     The plaintiff continues to object to defendants calling witnesses, which defendants did not identify the subjects of information that each witness has personal knowledge of, in accordance with Rule 26 (a) (10 (A).

7.     The plaintiff objects to the defendants' calling any of plaintiff's attorneys as witnesses, and herein declares that she has not released the attorney-client privilege.

8.     The plaintiff objects to all defendants' exhibits not produced in discovery, particularly including each defendants' exhibit that is not identified by a bates number.

9.     The plaintiff raises her continuous objection to defendants' use of testimony and evidence that this Court has effectively barred defendants from offering due to defendants' failure to comply with discovery court orders.

10.    The plaintiff reserves the right to object to other evidence and/or witnesses offered by the defendants, as she has not had sufficient time to review defendants' pre-trial memorandum in its entirety.

      b.     <u>Defendant' Issues of Law</u>

      1.     Can an employee claim that an employer acted in violation of the ADA when the employer refused to recognize sick leave the employee claimed was subject to coverage under the FMLA?

      2.     Reserved by Defendant.

**7.**     **<u>Requested Amendments to the Pleadings</u>**

Defendants renew their request for the Court to strike the statements and documents referencing settlement negotiation contained in and/or attached to Plaintiff's Complaint. Fed.R.Ev. 408. Should the Court decline to strike these statements and/or documents from the Complaint, Defendants respectfully request the Court bar Plaintiff from referencing or relying upon statements and/or documents referencing settlement and prohibit the jury from viewing such information.

**8.**     **<u>Additional Matters</u>**

      a.     <u>Plaintiff's Additional Matters</u>

The defendants have consistently declined to negotiate the possibility of settlement in the MCAD and in litigation. But, if and when, defendants may consider settlement, then the plaintiff is amenable to engage in settlement talks.

      b.     <u>Defendants' Additional Matters</u>

At this time, Defendants have no additional matters for the Court to address.

**9.**     **<u>Length of Trial</u>**

Plaintiff's case is estimated to take approximately five to seven days. Defendants anticipate a twelve day trial.

10.    **Witnesses**[2]

    a.    Plaintiff's Proposed Witnesses

        1.    Bernadine T. Griffith

        2.    Edgar W. Griffith

        3.    Thomas G. Ford

        4.    William Queenan

        5.    Michael A. Sisto

        6.    Karen Allen Holmes

        7.    Monica Scanlon

        8.    Cynthia McKinney

        9.    Rebuttal witness: Helen D. Tramposch, MD

        10.    Rebuttal witness: John Garrison, Ph.D.

        11.    Rebuttal witness: Susan Moner, MD.

        12.    Erin M. O'Toole, Esq.

        13.    Cristin L. Rothfuss, Esq.

        14.    Kenneth L. Kimmell, Esq.

        15.    Steven S. Locke, Esq.

        16.    The plaintiff reserves the right to call any other rebuttal witness, as necessary

    b.    Defendant's Proposed Witnesses

        1.    Bernadine Griffith

        2.    Karen Allen Holmes

---

[2] Witness addresses have been withheld due to the fact that this document will be accessible to the general public.

3.      Michael A. Sisto

4.      Monica Scanlon

5.      Judy Volente

6.      Suzanne Harris Walker

7.      John Garrison, Ph.D.

8.      Susan Moner, MD

9.      Helen Tramposch, MD

10.     Harvey Waxman, Ph.D.

11.     Cristin Rothfuss, Esq.

12.     Kenneth Kimmell, Esq.

13.     Irene Bagdoian, Esq.

14.     Erin O'Toole, Esq.

15.     Tom Danforth

16.     Barbara Medeiros

17.     Joanne Murphy

18.     Lori LeClerc

19.     Albert Battistini

20.     Ed Freeman

21.     Thomas Ford

22.     John McLaren

23.     Cathleen Moynihan

24.     Bob Petrarca

25.     Lisa Studholme

26.    Nancy Snyder

27.    Lenore Woodley

28.    Jan Kwazniak

29.    Rick Cantin

30.    Mary Ann Russo

31.    Bob Petrarca

32.    Steve Tompkins

33.    Aihua Dai

34.    Defendants reserve the right to call unidentified rebuttal witnesses
where necessary.


11.    **Proposed Exhibits**

a.    Plaintiff's Proposed Exhibits

1.    November 11, 1995 Performance Appraisal of Bernadine T.
Griffith

2.    August 20, 1996 Bagdoian letter to Battistini

3.    October 25, 1996 Cathleen Moynihan Memorandum to Bernadine
Griffith, Ed Freeman

4.    June 25, 1997 Thomas Ford letter to Maurice Muir, Investigator
MCAD

5.    January 5, 2000 Performance Appraisal of Bernadine T. Griffith.

6.    January 7, 2000 Performance Appraisal of Bernadine T. Griffith.

7.    January 20, 2000 medical note requesting accommodation
generated by Dr. B.D. Gupta

8.    July 1, 1997 Erin M. O'Toole letter to Cathleen M. Moynihan

9.      May 23, 2000 CGU Associate Disciplinary Action Notice concerning Bernadine Griffith

10.     November 20, 1996 Bob Gowdy Memorandum concerning CU Sick Time Policy

11.     May 31, 2000 medical excuse note prepared by Dr. Seek

12.     June 5, 2000 Joanne M. Murphy letter to Bernadine T. Griffith

13.     June 12, 2000 Garrison letter to whom it may concern regarding Bernadine Griffith

14.     June 22, 2000 Garrison letter to whom it may concern regarding Bernadine Griffith

15.     July 27, 2000 CGU Associate Disciplinary action notice

16.     August 10, 2000 Cristin L. Rothfuss letter to Michael Sisto

17.     September 27, 2000 Sisto letter to Bernadine Griffith

18.     October 19, 2000 Cristin L. Rothfuss e-mail to Bernadine Griffith

19.     October 23, 2000 Kenneth L. Kimmell letter to Bernadine Griffith

20.      January 29, 2001 Brian Hardiman letter to Bernadine Griffith

21.     July 26, 2002 Probable Cause Finding regarding Bernadine Griffith v. Commercial Union Insurance

22.     Exhibits marked in the taking of the Deposition of William Queenan

23.     Exhibits marked in the taking of the Deposition of Thomas Ford

24.     Exhibits marked in the taking of the Deposition of Monica Scanlon

25.     Exhibits marked in the taking of the Deposition of Michael Sisto

26.     Exhibits marked in the taking of the Deposition of Karen Allen Holmes

27.     Plaintiff's medical records produced to defendants bate stamped: P001-P259

28. Plaintiff's e-mails and income and benefits documentation produced to defendants bate stamped P260-P514

29. Plaintiff's MCAD file produced to defendants bate stamped: MCAD0001-MCAD637

30. Plaintiff reserves the right to supplement her exhibit list.

b. <u>Defendant's Proposed Exhibits</u>

1. June 15, 1992 email from Suzanne Harris Walker

2. April 9, 1996 handwritten note to Bernadine Griffith, Bates stamp number P297

3. June 22, 1996 program code

4. June 27, 1996 email from Suzanne Harris Walker, Bates stamp number P383

5. July 1, 1996 program code

6. July 9, 1996 handwritten note, Bates stamp number P298

7. July 25, 1996 email from Bernadine Griffith and subsequent handwritten notes, Bates stamp numbers P295 – P296

8. July 25, 1996 email from Suzanne Harris Walker, Bates stamp number P299

9. July 30, 1996 notes of Suzanne Harris Walker

10. August 7, 1996 email from Bernadine Griffith, Bates stamp number P307

11. August 20, 1996 letter from Irene H. Bagdoian, Bates stamp numbers DEF 0215 – DEF 0216

12. August 23, 1996 notes, Bates stamp numbers DEF 0084 – DEF 0085

13. September 27, 1996 Salary Continuation Form, Bates stamp number DEF 0206 – DEF 0207

14. October 21, 1996 notes, Bates stamp numbers DEF 0139 – DEF 0140

15. October 25, 1996 C. U. Memorandum from Cathleen Moynihan, Bates stamp number DEF 0138

16. November 5, 1996 Meeting Notes of Cathleen Moynihan, Bates stamp number DEF 0199

17. December 5, 1996 CU Performance Appraisal for Edmund Freeman, Bates stamp number MCAD0411 – MCAD0412

18. 1997 attendance record of Bernadine Griffith, Bates stamp number DEF 0129

19. April 29, 1997 Lahey Clinic return to work note, Bates stamp number DEF 0285

20. April 29, 1997 Charge of Discrimination, MCAD Docket No.97BEM1760 with attached documents, Bates stamp numbers MCAD0506 – MCAD0509

21. May 7, 1997 Lahey Clinic return to work note, Bates stamp number DEF 0284

22. May 23, 1997 Lahey Clinic return to work note, Bates stamp number DEF 0283

23. June 6, 1997 Salary Continuation Form, Bates stamp numbers DEF 0278 – DEF 0279

24. June 9, 1997 letter from Helen Tramposch, M.D., Bates stamp numbers DEF 0222 – DEF 0223

25. June 25, 1997 letter from Thomas Ford, Bates stamp numbers MCAD0479 – MCAD0481

26. June 27, 1997 Salary Continuation Form, Bates stamp numbers DEF 0280 – DEF 0281

27. July 10, 1997 letter from Lenore Woodley, R.N., Bates stamp numbers DEF 0224 – DEF 0225

28. July 31, 1997 Salary Continuation Form, Bates stamp numbers DEF 0243 – DEF 0244

29. August 4, 1997 Affidavit in Support of her Rebuttal to Respondents' Position Statement, MCAD Docket No. 97BEM1760, Bates stamp numbers MCAD0474 – MCAD0478

30. August 5, 1997 Rebuttal to Respondents' Position Statement, MCAD Docket No. 97BEM1760, Bates stamp numbers MCAD0464 – MCAD 0473

31. 1998 CGU Personal Benefits Report for Bernadine Griffith, P472 – P488

32. March 30, 1998 email from Monica Scanlon, Bates stamp number P419

33. May 21, 1998 email from Bernadine Griffith

34. July 27, 1998 handwritten notes of Suzanne Harris Walker at 10:00 a.m.

35. July 27, 1998 handwritten notes of Suzanne Harris Walker at 2:00 p.m.

36. December 17, 1998 CU Exempt Performance Appraisal of Bernadine Griffith, Bates stamp numbers DEF 0127 – DEF 0128

37. 1999 Griffith family income tax return

38. 1999 attendance record of Bernadine Griffith, Bates stamp numbers DEF 0170 – DEF 0171

39. 1999 attendance record of Bernadine Griffith, Bates stamp numbers DEF 0183 – DEF 0185

40. CGU Insurance Group Disability Coverage effective January 1, 1999, Bates stamp numbers DEF 0321 – DEF 0340

41. June 1999 CGU Organizational Chart, Bates stamp numbers P268 – P288

42. August 26, 1999 email exchange, Bates stamp number DEF 0272

43. September 16, 1999 telephone memorandum to John Garrison, Ph.D., Bates stamp number P024

44. September 17, 1999 letter from John Garrison, Ph.D., Bates stamp number DEF 0273

45. October 20, 1999 letter from Susan Moner, M.D., Bates stamp number DEF 0271

46. November 11, 1999 email exchange, Bates stamp numbers P289 - P290

47. November 20, 1999 prescription note, Bates stamp number DEF 0270

48. December 5, 1999 Lahey Clinic return to work note, Bates stamp number DEF 0268

49. December 14, 1999 Lahey Clinic return to work note, Bates stamp number DEF 0287

50. 2000 Griffith family income tax return

51. 2000 attendance record of Bernadine Griffith, Bates stamp numbers DEF 0175 – DEF 0177

52. 2000 attendance record of Bernadine Griffith, Bates stamp numbers DEF 0178 – DEF 0179

53. January 5, 2000 memo from Monica Scanlon and attachment to 1999 Annual Performance Appraisal, Bates stamp number DEF 0082

54. January 5, 2000 memo from Karen Holmes with attached documents, Bates stamp numbers DEF 0122 - DEF 0124

55. January 7, 2000 CU Performance Appraisal of Bernadine Griffith, Bates stamp numbers DEF 0125 – DEF 0126

56. January 9, 2000 e mail from Karen Holmes, Bates stamp number P333

57. January 11, 2000 e mail from Karen Holmes, Bates stamp number P334

58. January 20, 2000 prescription note, Bates stamp number DEF 0121

59. January 31, 2000 email from Bernadine Griffith, Bates stamp number DEF 0586

60. February 1, 2000 e-mail from Karen Holmes, Bates stamp number DEF 0256

61.    February 1, 2000 e-mail from Karen Holmes, Bates stamp number MCAD0090

62.    February 11-14, 2000 e mail exchange, Bates stamp number P336

63.    Performance Job Record of Bernadine Griffith, April – September 2000, Bates stamp numbers DEF 0093-DEF 0094.

64.    April 14, 2000 email from Bernadine Griffith, Bates stamp number DEF 0569

65.    April 18, 2000 email from Bernadine Griffith, Bates stamp number DEF 0585

66.    April 19, 2000 email from Bernadine Griffith, Bates stamp number DEF 0558

67.    April 19, 2000 email from Bernadine Griffith, Bates stamp number DEF 0559

68.    April 19, 2000 email from Bernadine Griffith, Bates stamp number DEF 0557

69.    April 19, 2000 email from Bernadine Griffith, Bates stamp number MCAD0095

70.    May 12, 2000 email from Bernadine Griffith, Bates stamp number DEF 0568

71.    May 17, 2000 email exchange, Bates stamp number DEF 0581

72.    May 19, 2000 email from Bernadine Griffith, Bates stamp number DEF 0567

73.    May 23, 2000 Associate Disciplinary Action Notice, Bates stamp number DEF 0117– DEF 0118 and DEF 0120.

74.    May 23, 2000 meeting notes from Michael Sisto, Bates stamp number DEF 0111

75.    May 23, 2000 meeting notes from Karen Holmes, Bates stamp numbers DEF 0112 – DEF 0113

76.    May 23-24, 2000 notes, Bates stamp number DEF 0119

77.  May 23, 2000 Lahey Clinic return to work note, Bates stamp number DEF 0262

78.  May 23, 2000 Lahey Clinic discharge information, Bates stamp number DEF 0261

79.  May 26, 2000 email from Bernadine Griffith, Bates stamp number DEF 0566

80.  May 26, 2000 email from Bernadine Griffith, Bates stamp number DEF 0579

81.  May 31, 2000 prescription, Bates stamp number DEF 0214

82.  May 31, 2000 email from Bernadine Griffith, Bates stamp number DEF 0578

83.  June 2000 Physician's Report Form from John Garrison, Ph.D. for Bernadine Griffith

84.  June – September 2000 personal calendar of Bernadine Griffith, Bates stamp numbers MCAD0155 – MCAD0158

85.  June 2, 2000 CGU Family and Medical Leave Act (FMLA) Certification Form, Bates stamp numbers DEF 0211 - DEF 0212

86.  June 4, 2000 prescription information, Bates stamp number 0241

87.  June 5, 2000 letter from Joanne Murphy, Bates stamp number DEF 0079

88.  June 12, 2000 letter from John Garrison, Ph.D., Bates stamp number DEF 0210

89.  June 13, 2000 letter from Bernadine Griffith, Bates stamp number DEF 0209

90.  June 13, 2000 email from Bernadine Griffith, Bates stamp number DEF 0577

91.  June 22, 2000 letter from John Garrison, Ph.D., Bates stamp number DEF 0143

92.  June 22, 2000 letter from John Garrison, Ph.D. with handwritten notes, Bates stamp number DEF 0110

93.    June 30, 2000 email from Bernadine Griffith, Bates stamp number DEF 0565

94.    Third quarter 2000 CGU employee savings plan information for Bernadine Griffith account, Bates stamp numbers P506 – P514

95.    July 5, 2000 email from Bernadine Griffith, Bates stamp number DEF 0576

96.    July 7, 2000 email from Bernadine Griffith, Bates stamp number DEF 0564

97.    July 11, 2000 email from Bernadine Griffith, Bates stamp number DEF 0575

98.    July 14, 2000 email from Bernadine Griffith, Bates stamp number DEF 0563

99.    July 17, 2000 letter from Bernadine Griffith, Bates stamp number DEF 0257

100.    July 24, 2000 email from Bernadine Griffith, Bates stamp number DEF 0574

101.    July 26, 2000 letter from John Garrison, Ph.D. with handwritten notes, Bates stamp number DEF 0107

102.    July 26, 2000 notes of Karen Holmes, Bates stamp number DEF 0109

103.    July 26, 2000 email from Bernadine Griffith, Bates stamp numbers DEF 0572 – DEF 0573

104.    July 27, 2000 Associate Disciplinary Action Notice, Bates stamp numbers DEF 0114 – DEF 0116

105.    July 27, 2000 notes of Lisa Studholme, Bates stamp number DEF 0108

106.    July 28, 2000 email from Bernadine Griffith, Bates stamp number DEF 0562

107.    August 2, 2000 letter from Nancy Snyder, Bates stamp number DEF 0106

108.    August 4, 2000 email from Bernadine Griffith, Bates stamp
        number DEF 0561

109.    August 10, 2000 letter from Cristin Rothfuss, Bates stamp numbers
        DEF 0099 – DEF 0102

110.    August 11, 2000 email from Bernadine Griffith, Bates stamp
        number DEF 0560

111.    August 16, 2000 memo from Karen Holmes, Bates stamp numbers
        DEF 0103 – DEF 0105

112.    September 27, 2000 termination letter from Michael Sisto, Bates
        stamp number DEF 0087

113.    September 27, 2000 CGU Termination Input screen shot, Bates
        stamp number DEF 0088

114.    September 27, 2000 pay check, Bates stamp number DEF 0090

115.    Fourth quarter 2000 CGU employee savings plan information for
        Bernadine Griffith account, Bates stamp numbers P495 – 502

116.    October 2, 2000 notes of Bernadine Griffith, Bates stamp numbers
        DEF 0006 – DEF 0008

117.    October 5, 2000 Charge of Discrimination, MCAD Docket No.
        001330006, Bates stamp numbers MCAD0007 – MCAD0008

118.    October 13, 2000 letter from Anne Sanford, Bates stamp number
        MCAD0098

119.    October 25, 2000 letter from John Garrison, Ph.D., Bates stamp
        number DEF 0265

120.    November 2, 2000 CGU Associate Handbook, Bates stamp
        numbers DEF 0623 – DEF 0866

121.    2001 Griffith family income tax return

122.    January 16, 2001 letter from Thomas Ford with attached
        documents, Bates stamp numbers DEF 0596 – DEF 0601

123.    January 29, 2001 letter from Brian Hardiman, Bates stamp
        numbers DEF 0247 – DEF 0248

124.    June 19, 2001 letter from Bernadine Griffith, Bates stamp numbers DEF 0590 – DEF 0593

125.    September 25, 2001 CGU Insurance Group Life Insurance, Bates stamp numbers DEF 0358 – DEF 0387

126.    September 25, 2001 CGU Insurance Group Pension SPD, Bates stamp numbers DEF 0458 – DEF 0514

127.    2002 Griffith family income tax return

128.    September 3, 2002 letter from Kenneth Kimmel, Bates stamp number MCAD0530

129.    October 21, 2002 notes of Bernadine Griffith, Bates stamp numbers DEF 0073 – DEF 0076

130.    2003 Griffith family income tax return

131.    April 11, 2003 Appeal of Complainant Bernadine T. Griffith, MCAD Docket No. 001330006, Bates stamp numbers, MCAD0014-MCAD0027

132.    September 17, 2003 Order of Dismissal for MCAD Docket No. 97BEM1760, Bates stamp number, MCAD0514

133.    May 2, 2004 letter from Walter J. Sullivan, Jr., Bates stamp number MCAD0009

134.    Map of office as drawn on February 16, 2005 by Bernadine Griffith included as Exhibit 1 to Griffith deposition

135.    July 25, 2005 expert report of Harvey Waxman, Ph.D., Bates stamp numbers DEF 2671 – DEF 2685

136.    Undated CGU Associate Handbook, Bates stamp numbers DEF 02604 – DEF 02670

137.    Undated CGU Insurance Group MetLife Dental Plan, Bates stamp numbers DEF 0292 – DEF 0320

138.    Undated CGU Insurance Group MetLife Dental Plan, Bates stamp numbers DEF 0341 – DEF 0357

139.    Undated CGU Insurance Group Savings Plan, Bates stamp numbers DEF 0515 – DEF 0550

140.   Undated CGU Insurance United HealthCare Point of Service Plan, Bates stamp numbers DEF 0388 – DEF 0457

141.   Undated organizational chart, Bates stamp number P469

142.   Undated memo from Jan Kwasniak, Bates stamp number DEF 0142

143.   Undated CGU absence management documents, Bates stamp numbers P260 – P266

144.   Undated "The Simpson's" cartoon

145.   Undated "The Tom and Gary Show" cartoon

146.   Undated "Popeye" RUAC cartoon

147.   Undated RUAC cartoon

148.   Undated "Monty" cartoon by Jim Meddick

149.   Undated Recommendation for Dismissal, MCAD Docket No. 001330006, Bates stamp numbers MCAD0010 – MCAD0012

150.   Undated Retention Bonus List, Bates stamp numbers DEF 0020 – DEF 0024

151.   Undated Lahey Clinic memorandum, Bates stamp number DEF 0286

152.   Pension information for Bernadine Griffith, Bates stamp numbers DEF 0606 – DEF 0622

153.   Harris, Joel Chandler, The Favorite Uncle Remus, "The Wonderful Tar-Baby" Houghton Mifflin Company, New York, 1975

154.   Harris, Joel Chandler & Glover, Danny, Brer Rabbit and the Wonderful Tar-Baby Rabbit Ears, 1992

155.   All documents related to Bernadine Griffith as produced over the course of discovery by Lahey Clinic including but not limited to Plaintiff's medical notes and records, correspondence records, and psychological notes and records.

156.   Any and all exhibits relied upon or introduced by Plaintiff.

157.    Defendants reserve the right to amend this list.

**12.    The Parties' Objections to Evidence**

a.    Plaintiff's Objections to Evidence

1.    The plaintiff objects to the defendants' expert witness and the admission of his report, as is originally set forth in plaintiff's Opposition to Defendants' request for Rule 35 Medical Exam of the plaintiff, and further plaintiff invokes the governing Federal Rules of Evidence: Rules 701-706.

2.    The plaintiff objects to the defendants calling Dr. John Garrison, and herein invokes the Psychotherapist-Patient privilege.

3.    The plaintiff continues to object to defendants offering Dr. John Garrison records pertaining to plaintiff, as is raised in plaintiff's motion and supporting letters pertaining to the removal and sealing of defendants' first motion for summary judgment.

4.    The plaintiff reserves the right to object to other evidence and/or witnesses offered by the defendants.

b.    Defendants' Objections to Evidence

1.    To the extent Plaintiff intends to introduce expert evidence at trial, Defendants objects to the use of an expert as Plaintiff failed to disclose any expert by her May 15, 2005 disclosure deadline or the August 15, 2005 deadline for the taking of expert depositions and failed to supplement her response to Defendants' discovery requests seeking expert information.

2.    To the extent Plaintiff intends to introduce exhibits at trial that were requested during the course of discovery but never produced, Defendants will object to the use of such documents as exhibits.

3.    Plaintiff has at times seemed to indicate that she will offer statistical evidence in support of a disparate treatment argument.  If such evidence is referenced in an opening statement or proffered to the jury, Defendants will object that no proper foundation has been laid for such evidence, that it is not competent as offered, and that it must be excluded.

4.    Plaintiff has at times seemed to indicate that she will offer evidence at trial regarding discovery disputes and other procedural issues arising prior to trial.  If such evidence is referenced in an opening statement or proffered to the jury, Defendants will object that no proper foundation has been laid for such evidence, that it is not relevant, that it is not competent as offered, that it is solely for the Court's consideration, and that it must be excluded.

5.    Defendants reserve the right to amend their objections to evidence.


Respectfully submitted,

KATHLEEN J. HILL                          MORGAN, BROWN & JOY, LLP
Attorney for Plaintiff                    Attorneys for Defendants
92 State Street, Suite 700                200 State Street
Boston, MA 02109                          Boston, MA 02109
617-742-0457                              617-523-6666


By: s/ Kathleen J. Hill                   By:  s/ Leah M. Moore
     Kathleen J. Hill, Esq.                    Keith B. Muntyan, Esq.
                                               Leah M. Moore, Esq.


Dated: September 13, 2005

27