## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### CIVIL ACTION NO.: 03 CV 12573 EFH

```
                                    )
BERNADINE T. GRIFFITH              )
       Plaintiff                   )
                                   )
vs.                                )
                                   )
ONEBEACON INSURANCE COMPANY,       )
ONEBEACON AMERICA INSURANCE        )
COMPANY, MICHAEL A. SISTO, and     )
KAREN ALLEN HOLMES                 )
       Defendants                  )
                                   )
```

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Court should deny the July 29, 2005 Defendants' Motion For Summary Judgment and sanction the Defendants by entering a default judgment against the Defendants because Defendants have violated federal laws and the rules of this Court; intentionally and maliciously published Plaintiff's personal data identifiers and confidential information on PACER in the course of litigation, subjecting the Plaintiff to identity theft; failed to obtain leave of the court to file the July 29, 2005 Defendants' Motion for Summary Judgment under seal and to serve the Plaintiff with a copy of the July 29, 2005 Defendants' Motion For Summary Judgment filed under seal, in violation of the rules of this Court and the July 27, 2005 Order; failed to comply with discovery orders dated September 14, 2004 and March 15, 2005; and the Defendants have failed to show there are no genuine issues of material fact on the relevant issues raised in its Motion for Summary Judgment.

## STATEMENT OF FACTS

On July 21, 2005, the Defendants electronically filed two non-conforming motions for summary judgment,[1] in which Defendants wrongfully published the Plaintiff's personal and confidential information on PACER, including the Plaintiff's personal data identifiers: social security number, birth date, residential address, mailing address, telephone number, husband's business address, retirement identifying information, medical records, psychological records, and patient identifying information. The Plaintiff filed an Emergency Motion to Seal Defendants' Motion For Summary Judgment,[2] and this Court required the Defendants to file only one copy of a motion for summary judgment that does not exceed forty (40) pages and required Defendants to serve a written copy of the Defendants' Motion for Summary Judgment within seven (7) days of the July 27, 2005 Order. The Defendants failed to comply with the July 27, 2005 Order. On July 29, 2005, without leave of court, the Defendants apparently re-filed one of the July 21, 2005 motions under seal and failed to serve the Plaintiff with the same. Further, the Defendants failed to comply with the September 14, 2004 and March 15, 2005 discovery orders (Docket No. 28) pertaining to Plaintiff's motions to compel, dated August 20, 2004 (Docket No. 25) and February 28, 2005 (Docket No. 38), respectively. Non-compliance of the discovery orders, in part, effectively barred the Defendants from submitting evidence at the time of summary judgment and may permit the entry of a default judgment. The Plaintiff filed a Motion for Default Judgment herewith.

---

[1] July 21, 2005 Defendants' motions for summary judgment referred to then-docketed numbers 61 – 70, which is now removed from the docket and sealed per July 27, 2005 Order. See Docket Sheet, attached as Exhibit A.
[2] The publication of the non-conforming motions remained on PACER for four (4) days and four (4) nights. The Plaintiff, not the defendant, took immediate affirmative steps to remove the filings from PACER.

## ARGUMENT

THIS COURT SHOULD DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
ENTER A DEFAULT JUDGMENT AS A SANCTION BECAUSE DEFENDANTS HAVE VIOLATED
FEDERAL LAWS AND THE RULES OF THIS COURT

This Court should impose serious sanctions on the defendants for having intentionally

and maliciously published the Plaintiff's social security number and other personal data

identifiers, subjecting the Plaintiff to identify theft. Whoever "discloses, uses, or compels the

disclosure of the social security number of any person in violation of the laws of the United

States shall be guilty of a felony and upon conviction thereof shall be fined under title 18 or

imprisoned for not more than five years, or both." *42 U.S.C. § 408 (a) (8)*. The E-Government

Act of 2002, which expressly prohibits the filing of personal data identifiers in federal public

printing and access to documents, was enacted to be consistent with laws "relating to (A) privacy

and confidentiality, including section 552a of title 5; (B) security of information, including

section 11332 of title 40; and (C) access to information, including section 552 of title 5. *44*

*U.S.C. § 3501*. Accordingly, Local Rule 5.3 restricts the publication of social security numbers,

names of minor children, dates of birth, and financial account numbers, pursuant to E-

Government Act of 2002.

In this case, the Defendants, who made an electronic filing of two non-conforming

motions for summary judgment on July 21, 2005, intentionally and maliciously, published the

Plaintiff's social security number and other personal data identifiers on PACER for four (4) days

and four (4) nights. The Plaintiff's social security number was published in multiply documents

(some documents were not produced to Plaintiff in the course of discovery) and deposition

transcripts attached as exhibits to the motions. Likewise, the Defendants intentionally and

maliciously published the Plaintiff's personal and confidential information in the body of

Defendants' Memorandum of Law.

Consequently, this Court should deny the Defendants' Motion for Summary Judgment and enter default judgment against the Defendants upon finding the Defendants have violated federal laws and court rules expressly prohibiting the publication of a parties' social security number and personal data identifiers, and hold both the defendants and counsel personally liable for all damages, including expenses and attorney's fees.

### THIS COURT SHOULD INVOKE ITS INHERENT POWERS TO ENTER A DEFAULT JUDGMENT BECAUSE DEFENDANTS HAVE INTENTIONALLY AND MALICIOUSLY ENGAGED EGREGIOUS CONDUCT AND VIOLATED THE RULES OF THIS COURT IN BAD FAITH

This Court should exercise its inherent powers and enter a default judgment against the Defendants as the curative sanction in managing Defendants' egregious litigation practices and to deter future abuses. The intentional and malicious publication[3] of a parties' personal and confidential information on PACER in the course of litigation, subjecting the party to identity theft, for four (4) days and four (4) nights is wholly egregious conduct that is evidence of defendants' callous disregard and deliberate intention to cause the Plaintiff substantial and irreversible harm. See Chambers v. NASCO, 501 U.S. 32, 44 (1991) (holding that district courts have inherent powers to impose serious sanctions for egregious conduct, including dismal of an action); National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam) (reasoning that it is desirable to deter future abuses, a district court may invoke its inherent powers to impose serious sanctions); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989) (reasoning that a district court has inherent

---

[3] July 25, 2005 Plaintiff's Emergency Motion To Seal Defendants' Motion For Summary Judgment and July 26, 2005 letter to Senior Justice Harrington, attached as Exhibit B.

power to do whatever is necessary to deter abuse of judicial process, including the innate power to dismiss an action); Farm Constr. Services, Inc. v. Fudge, 831 F.2d 18, 20 (1st Cir. 1987) (holding that less drastic sanctions need not precede a judgment of dismissal). Invoking the serious sanction of a default judgment is warranted in cases where the defaulting party's misconduct is wholly egregious. See Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771F.2d 5, 11 & n. 5 (1st Cir. 1985) (affirming entry of default judgment for procedural non-compliance and reasoning that district courts possess an inherent power to deal with troublesome litigation); see also D.P. Apparel Corp. v. Roadway Express, Inc., 736 F.2d 1, 3 (1st Cir. 1984); Corchado v. Puerto Rico Marine Management, Inc., 665 F.2d 410, 413 (1st Cir. 1981), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). If this Court acquiesces, turns a blind eye to this kind of egregious conduct in litigation, then surely it will have indirectly aided and abetted in the disclosure and misuse of personal data identifiers; and will have, in itself, effectively celebrated the violation of existing federal laws enacted to secure and protect the citizens of the United States from identity theft.

Furthermore, the Defendants acted in bad faith and purposely flouted the July 27, 2005 Order when they decided to re-file the same non-conforming motion for summary judgment; Defendants' re-filed the July 21, 2005 non-conforming motion[4] under seal, without leave of the court, in accordance with Local Rule 5.3; and, Defendants did not serve the Plaintiff with a copy of the July 29, 2005 Motion for Summary Judgment as ordered by this Court and required by Fed. R. Civ. P. 5(a) and Local Rule 7.1 (c).

Therefore, This Court must act with a firm hand when penning the Order and impose the

_____

[4] Local Rule 5.3 delineates the procedure for filing a "document" under seal.

entry of default judgment against the Defendants.

THIS COURT SHOULD DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
ENTER A DEFAULT JUDGMENT FOR THE PLAINTIFF BECAUSE DEFENDANTS HAVE WILFULLY
AND DELIBERATELY VIOLATED COURT DISCOVERY ORDERS

Unequivocally, Federal Rule of Civil Procedure 37 empowers this Court with broad

discretion to impose sanctions against the disobedient defendants who failed to comply with the

discovery orders, including the dismissal of an action or the entry of a default judgment.

Fed.R.Civ.P. 37 (b) (2) (B) (C), in pertinent part, states:

- (B) An order refusing to allow the disobedient party to support or oppose
    designated claims or defenses, or prohibiting that party from introducing
    designated matters in evidence;
- (C) An order striking out pleadings or parts thereof, or staying further
    proceedings until the order is obeyed, or dismissing the action or proceeding
    or any part thereof, or rendering a judgment by default against the
    disobedient party;

Fed.R.Civ.P. 37(b)(2)(C) permits a court to impose the sanction of an entry of a default

judgment against a non-complying defendant for disobeying an order. See U.S. v. Palmer, 956

F.2d 3 (1st Cir. 1992) (affirming entry of a default judgment for disobeying a discovery order and

reasoning that there is no expressed limitation of default judgments under Rule 37); Marquis

Theatre Corp. v. Condado Mini Cinema, 846 F.2d 86, 88-90 (1st Cir. 1988) (affirming district

court's striking answer as sanction for non-production of documents); Brockton Sav. B. v. Peat,

Marwick, Mitchell, 771 F.2d 5, 6-10 (1st Cir. 1985) (affirming entry of default judgment for non-

compliance of a discovery order and discussing the authority of the district court to enter a

default judgment); Hammond Packing Co. v. Arkansas, 212 U.S. 322 (1909) (affirming the

striking of an answer and entry of a default judgment against a defendant who failed to comply

with a pretrial discovery order).

6

Accordingly, Rule 37 empowers the district courts with broad discretion to bar a disobedient party from introducing certain evidence and to dismiss an action or enter a default judgment against a disobedient party. A district court may hold both the disobedient party and counsel personally liable for expenses, including attorney's fees. Most importantly, the United States Supreme Court reasoned that Rule 37 sanctions should be applied "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." Roadway Express, Inc. v. Piper, 447 U.S. 752, 763, 100 S.Ct. 2455, 2462 (1980), citing National League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778 (1976) (per curiam). See also Pan American Grain MFG. v. Puerto Rico P.A., 295 F.3d 108 (1st Cir. 2002) (affirming sanctions imposed at trial for actions taken in discovery because disobedient parties "were disruptive of orderly course of litigation, insulting to the dignity of the Court, and most importantly, utterly lacking in civility).

The willful failure to answer interrogatories and produce necessary documents in accordance with this Court's discovery orders dated September 14, 2004 and March 15, 2005 (Filing No. 38) [5]seriously hinders the Plaintiff's right to pursue her claims and constitutes actions sufficient to warrant sanctions under Rule 37 (b) (2), including the denial of Defendants' Motion for Summary Judgment, the entry of a default judgment in favor of Plaintiff with regard to her Complaint, and a finding that the Defendants are in contempt for their failure to comply, as is more fully set forth in Plaintiff's Motion for Default Judgment and reincorporated herein.

---

[5] The Plaintiff reincorporates each and every argument raised in her corresponding Motions to Compel Discovery, as if argued herein and requests the Court invoking sanctions requested .

7

THIS COURT SHOULD DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE
THE DEFENDANTS HAVE FAILED TO SHOW THAT THERE ARE NO GENUINE ISSUES OF
MATERIAL FACTS AS TO THE RELEVANT ISSUES AS TO ANY COUNT

Summary Judgment is disfavored in disparate treatment cases because the issue of an
employer's discriminatory motive is "elusive and rarely is established by other than
circumstantial evidence," and this requires "the jury to weigh the credibility of conflicting
explanation" of adverse employment actions. *Blare v. Husky Injection Molding Sys. Boston,* Inc.,
419 Mass. 437, 439-40 (1995), citing, in pertinent part, *Wheelock College v. Massachusetts
Comm'n Against Discrimination,* 371 Mass. 130, 137 (1976). If a genuine issue of claimed
disputed material facts is supported by sufficient evidence, a trial is required. *Morris v. Gov't
Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.,* 6
F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72
(1994). "There is no room for credibility determinations, no room for the measured weighing of
conflicting evidence such as the trial process entails, and no room for the judge to superimpose
his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and
without regard to credibility determinations, reveals no genuine issue as to any material fact may
the court enter summary judgment.". *Cruz-Baez v. Negron-Irizarry,* 360 F.Supp.2d 326, 332
(D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

The Defendants have failed to satisfy their burden to show that the Plaintiff has no
reasonable expectation of proving the issues raised in her Verified Amended Complaint.
Moreover, there are genuine issues of material fact not challenged that should survive as trial
worthy issues.

First, because the Plaintiff averred direct evidence and indirect evidence of discrimination
in her Verified Amended Complaint the Plaintiff has triggered the Mixed-Motive Approach.

8

*See, Fernandes v. Costa Brothers Masonry, Inc.* 199 F.3d 572, 580 (1st Cir. 1999); *Burton v. Town of Littleton,* 426 F.3d 9 (1st Cir. 2005) (allowing Mixed-Motive Approach even when only circumstantial evidence exists). The Plaintiff averred, as in her April 27, 1997 Complaint duly filed in the Massachusetts Commission Against Discrimination, that her supervisor, Edmund Freeman, intentionally caused a racial slur to be expressly directed toward her, calling her a "tar baby" in front of another co-worker when Freeman did not want to work with the Plaintiff, subjecting her to humiliation and ridicule within her work group, thus establishing direct evidence of a hostile work environment. Plaintiff's Verified Amended Complaint ¶¶ 20 -46. The Plaintiff clearly asserted that the discriminatory practices creating a hostile work environment continued throughout the Plaintiff's employment. Plaintiff's Verified Amended Complaint ¶¶ 46 - 130.

Second, the Defendants who purportedly raised the Pre-text Approach on page four of its Argument simply fail to follow this approach, thus rendering their multiple arguments unsound and not logically connected to any cognizable modality of a discrimination analysis. The Defendants' Argument does not even identify which, if any, counts should be dismissed, thereby leaving the guesswork for the Court and Plaintiff to determine. No rule of civil procedure or law requires the Plaintiff to bear the burden of reorganizing and expanding upon snippets of Defendants' sub-arguments into a cognizable modality of a discrimination analysis, or that Plaintiff must designate which counts are to be dismissed.

Third, the Defendants' leading argument is moot,[6] and the remaining argument is

---

[6] Plaintiff objects to the Defendants sub argument entitled "The Federal Anti-Discrimination Statutes Expressly Prohibit Individual Liability" (page 5 - 8) within Heading II "Plaintiff's Claims of Discrimination Under the Federal Anti-Discrimination Statues Fail As a Matter of

disorganized, not logically connected to any given count. The Defendants style of argument

consists of select facts meshed together in sub-arguments, facts of which are often taken out of

context, for the purpose of attempting to broad sweep a dismissal of claims. For example, on

page 23 Defendants state in a subheading labeled C under Heading III Plaintiff's Claims for

Retaliation Fail As a Matter of Law: "Plaintiff has failed to meet her burden of proof on her

claims of retaliation under the ADEA, Title VII, and the ADA" because, as the argument

proceeds, "during deposition, Plaintiff testified" . . . about only three instances of retaliation . . .

"these examples were the only instances of retaliation she suffered during her tenure at

OneBeacon," despite Plaintiff having averred multiple incidents of retaliation in five counts of

the Verified Amended Complaint. Plaintiff's Verified Amended Complaint ¶¶ 154 - 158, Count

Two - Retaliation Under ADA; Plaintiff's Verified Amended Complaint ¶¶ 165 - 169, Count

Four - Retaliation Under Title VII; Plaintiff's Verified Amended Complaint ¶¶ 174 - 178, Count

Six - Retaliation Under AEDA; Plaintiff's Verified Amended Complaint ¶¶ 195 - 199, Count

Nine - Retaliation Under ADA (against defendants CU and CGU only); Plaintiff's Verified

Amended Complaint ¶¶ 206 - 210 Count Eleven, Retaliation Under Title VII (against defendants

CU and CGU only).

Fourth, Defendants have failed to address Plaintiff's claim that the Defendants neglected

and/or refused to properly investigate her multiple complaints of racial and disability

discriminatory practices, and have failed to take remedial steps to eradicate racial discrimination

---

Law" because this issue has been argued under prior Motion with order entered denying
dismissal of individual defendants.

10

in the work place (facts the Massachusetts Commission Against Discrimination relied on, in part, when finding probable cause in December of 1999). Plaintiff's Verified Amended Complaint ¶¶ 26 - 27; Plaintiff's Verified Amended Complaint, Exhibit 22, December 6, 1999 Recommendation to Vacate a Lack of Probable Cause Finding and Enter a Probable Cause Finding.

THIS COURT SHOULD DENY THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS AS TO THE RELEVANT ISSUES AVERRED IN PLAINTIFF'S COMPLAINT

Plaintiff renews and reincorporates her objections raised in the proceeding argument, and specifically opposes Defendants' Argument presented in their Memorandum of Law, as follows:

Page 5, Heading "A. The federal Anti-Discrimination Statutes Expressly Prohibit Individual Liability.

*Plaintiff's argument* - The Defendants' argument is moot. Ibid. FN5.

Page 8, Heading "B. Plaintiff's Claims of Discrimination are Time-Barred"

*Plaintiff's argument* - The Verified Amended Complaint properly avers continuing violations creating a hostile work environment. (Verified Amended Complaint ¶¶ 46 - 130.) "A hostile work environment is composed of a series of separate acts that collectively constitute one unlawful employment practice." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 117. When a plaintiff has alleged "'an act contributing to the claim [that] occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Singletary*, 351 F.3d at 526-27 (quoting *Morgan*, 536 U.S. at

11

117). Acts falling outside the limitations period may be a continuing part of or an extension of the same actionable discriminatory practices within a limitations period that contributed to creating a hostile environment claim. *See id.* at 527-28 (citing and quoting *Morgan*, 536 U.S. at 117, 120-21). Therefore, discriminatory acts complained of that occurred between April 27, 1997 and December 6, 1999 are not time-barred and may be considered by the Court.

### Page 8, Heading "C. Plaintiff cannot establish a prima facie case of age discrimination"

*Plaintiff's argument* - Plaintiff's has made a claim for disparate impact supported by verified facts in counts five and six of the Complaint. (Verified Amended Complaint, ¶¶ 170 - 178.) As is set forth in Plaintiff's motions to compel discovery, Defendants have failed to produce the requested documents pertaining to disputed material facts. Furthermore, Defendants who violated discovery orders by refusing to produce discovery and did not question the Plaintiff about her age discrimination claim at Plaintiff's deposition or in their interrogatories, deliberately turning a blind eye to Plaintiff's AEDA counts, may not reasonably argue in good faith at the time of summary judgment that Plaintiff does not have "one scintilla of evidence" when Plaintiff has filed a verified complaint and specifically pursued discovery that is necessary to support her age discrimination claim.

### Page 9, Heading "D. Plaintiff Cannot Establish The Requisite Elements of a Title VII Claim

Without specifically stating which Title VII claim is being raised and without stating which count is being challenged, the Defendants allege the Plaintiff has failed to establish a prima facie case, citing the elements of a prima facie case under *Benoit v. Tech. Mfg. Corp.* 331 F.3d 166, 173 (1st Cir. 2003).

*Plaintiff's argument*: The First Circuit has "described the *prima facie* case as a `small

showing' that is `not onerous' and is `easily made.'" *See Kosereis v. Rhode Island,* 331 F.3d 207, 212-13 (1st Cir.2003); *Benoit v. Tech. Mfg. Corp.,* 331F.3d.166, 174 (1st Cir. 2003) (the initial burden is not onerous). Here, the Defendants attempt to explain away the actions of adverse employment actions, such as (1) simply denying that being terminated was not adverse because "it was Griffith's inability to report to work in a timely, consistent fashion that was the cause of her termination; in no way did her race contribute; or (2) 'both Holmes and Siston presumed that the issue of Griffith's outstanding raise was resolved at the same time as her peers.'" Defendants' Memorandum of Law, page 12. These issues, however, have nothing to do with establishing a prima facie case. Further, the First Circuit, will consider comparative evidence at the third stage of the analysis in a disparate treatment case. *See Conward v. Cambridge Sch. Comm. 171 F.3d 12, 20 (1st Cir. 1999).*

*Defendants' argument*: on page 10 subheading "1. Plaintiff Did Not Suffer an Adverse Employment Action" because they allege supervisor Freeman did not call her a tar baby.

*Plaintiff's argument*: Whether or not Freeman directed the comment to the Plaintiff is a genuine issue of material fact. The drawing that the Plaintiff made during her deposition shows that Freeman was standing at the work space of the Plaintiff, and she testified that he maintained eye contact with her when he made the tar baby comment. In the very least, it is undisputed that the racial slur was "insensitive." (Verified Amended Complaint, Exhibit 4.)

Within the same subheading Defendants argue that Plaintiff's 1999 performance review does not qualify because they assert that she reported to Scanlon.

*Plaintiff's argument*: This is a disputed fact. At Scanlon's deposition, Scanlon testified Plaintiff reported to Holmes in 1999. (Scanlon Deposition, pp. 55 - 56, 61.) Likewise, Sisto

testified that the Plaintiff reported to Holmes in 1999. (Sisto Deposition, pp. 24 -25.)

*Defendants' argument*:  on page 12 subheading "2. Failure to Provide Pay Increase was Administrative Oversight" that Sisto was unaware that the issue of the increase remained unresolved.

*Plaintiff's argument*: This is a disputed fact because Plaintiff's counsel demanded payment of the promised pay raise to Michael Siston in her August 10, 2000 letter specifically requesting: "[t]o rectify this situation, we request that CGU immediately: (1) retract the May 23, 2000 Written Warning and July 27, 2000 Probation/Final Warning from Ms. Griffith's personnel file and terminate her probation period; (2) provide Ms. Griffith with the flexible work schedule described above, including flexibility in arrival time, ability to seek medical treatment, and ability to take breaks; and (3) render to Ms. Griffith the $1,900.00 in compensation promised to her in January, 2000." (Verified Amended Complaint, Exhibit 17.)

*Defendants' argument*: on page 12 subheading "Plaintiff was terminated for violating the July 2000 Warning" because "it was Griffith's inability to report to work in a timely, consistent fashion that was the cause of her termination; in no way did her race contribute."

*Plaintiff's argument*: This is a disputed fact because the employer allegedly claimed to terminate the Plaintiff for being out sick. (Verified Amended Complaint, Exhibit 18.) The Plaintiff was on flex time, and Holmes and Scanlon testified that there was no system in place for tracking arrival times, and that an employees arrival time was under "the honor system." (Holmes Deposition, pp. 83-85, 88-89; Scanlon Deposition, pp 57-59, 76.) Plaintiff's FMLA leave is irrelevant to the alleged cause of termination; i.e., being out sick. Defendants apparently did not take into consideration absences taken due to FMLA, yet Defendants improperly raise

14

this issue as if it is material to the cause of termination. Of greatest significance, Holmes

testified that it was not clear whether or not the Plaintiff could take sick leave while she was

under disciplinary action. (Holmes Deposition, pp. 167-168, 175.) When asked "[a]t this

meeting did you discuss with Ms. Griffith what she should do if she is ill," Sisto testified: "I do

not recall. I believe the reason why we had human resources in there is to explain if she has an

illness, she has options. And again, I'm not a human resource knowledgeable person. There

were avenues she could take if she had to be -- not come to work, which was FMLA, and we had

disability policies, short-term disability policies that she could use to cover those situations."

(Sisto Deposition, pp 118-119.) Therefore, Sisto having terminated the Plaintiff for being out

sick is a pretext.


*Defendants' argument*: on page 14 subheading "4. Plaintiff has failed to Establish a

Hostile Work Environment" because Plaintiff did not establish "that the environment to which

she was subjected was so offensive that it interfered with her ability to perform her job."

*Plaintiff's argument* - Defendants allege in Fact ¶46, "taking her allegations as a whole" .

. . is nothing more than "simple teasing, offhand comments, and isolated incidents." Defendants

state: "While at OneBeacon, Griffith believed she was good employee, especially since she was

routinely selected by her managers to back up programmers who were senior to her when they

were absent." Fact ¶46. These facts support a finding that the Plaintiff was proficient, which are

material to establishing a prima facie case. Plaintiff avers that the continuous events creating a

hostile work environment in her Amended Verified Complaint in paragraphs 1-19, 62-158 of

count 3, and paragraphs 1-61, 144, and 186-199 of count 10, include that the Defendants

subjected her to an unwelcome racial hostile work environment when they failed to properly

investigate her complaints of racial discrimination and take remedial action; barred her from attending informal group meetings; denied her computer training and admission to programs accorded other white group employees; assigned her non-programming assignments and/or clerical tasking; did not give her access to manuals and books that other white co-employees enjoyed the use of; continued to employ and allow her supervisor to sit near her after this supervisor admitted to making a profoundly hurtful sever racial slur, calling Plaintiff a "tar baby"; refused to accommodate Plaintiff's disability by allowing her to work from home, a similar accommodation accorded another white female co-worker; revoked Plaintiff's medical leave; imposed medically restrictive job assignments on the Plaintiff that were not part of her job description; excluded Plaintiff from a company break room and training programs, issued pay raises to other white co-workers, but failed to tender her promised pay raise; Scanlon and Holmes scheduled training and career development classes for other members of the group, but intentionally excluded Plaintiff from the same training and career development classes; allowed other white co-workers to take computer certification programs during the day; on or about April 1999, Scanlon demoted the Plaintiff from Sr. Programmer Analyst to Programmer Analyst II, and barred the Plaintiff from invoking the company sick time policy, a policy granted other white co-workers. Plaintiff testified that Defendants allowed co-workers to throw rubber bands, paper clips, yogurt tops and mouse pads at the Plaintiff, subjected her to unwelcome verbal conduct related to a protected class; and changed the code in her program. (Griffith Deposition, Volume II, pp. 148-188.)

Page 14, Heading "E. Plaintiff Cannot Substantiate Her Disability Discrimination Claim

Defendants purport to argue under this heading Plaintiff cannot establish a prima facie

case under the ADA citing a prima facie case as delineated in *El Kouni, 169 F.Supp2d at 2-3 (Harrington, SJ).*

*Defendants' argument*: on page 14 subheading "1. Plaintiff's Heart Disease Is Not A Qualified Disability, Defendants allege that Plaintiff's "ability to work was not hampered by her heart disease, nor did her heart disease significantly restrict the condition, manner or duration of her work."

*Plaintiff's argument*: Defendants' argument is flawed when reasoning that: "after developing heart disease, she was no longer capable of undergoing extreme changes in temperature, running distances, shoveling snow, lifting heavy items, or eating foods that are high in cholesterol. Fortunately for Griffith, none of these tasks were required of her position as a computer programmer at OneBeacon." Exceptions to the lifting of heavy items related to moving office equipment (Verified Amended Complaint, ¶80), "none of these tasks" relied upon by Defendants were called into issue. Most importantly, the Defendants fail to discuss the fact that the Plaintiff was directed to minimize stress, as requested in her June 9, 1997 request for an accommodation. Dr. Tramposch writes, in pertinent part, " Ms. Griffith is having significant stress at work which brings on non-cardiac chest pain and may contribute to a mild increase in her blood pressure." (Verified Amended Complaint, Exhibit 8.) The Plaintiff has consistently testified that she is able to do her job with an accommodation. Plaintiff, through her treating physicians, requested three accommodations. (Verified Amended Complaint, Exhibit 8, Exhibit 17.) The Employer acknowledged her disability by granting two of the three requests for accommodation; and, provided her with handicap parking when the Plaintiff presented her State issued placard. The Plaintiff specifically testified that she informed Sisto and Holmes of her

17

disability during a performance review meeting in January of 2000. (Griffith Deposition, Volume III, pp. 373-379.) Sisto, however, recalls that the Plaintiff informed him of her disability during this meeting, but considers the facts irrelevant to the issuance of the written warning. (Sisto Deposition, pp 113-114.)

*Defendants' argument*: on page 16 under subheading "2. Plaintiff Could Not Perform The Essential Functions of Her Job "that she was incapable of performing the essential functions of her job, both with and without an accommodation."

*Plaintiff's Argument*: The Defendants acknowledge that the Plaintiff was able to do her job with an accommodation because after granting her two accommodations, they continued to find her "proficient". (Sisto Deposition, pp. 175-176; Scanlon Deposition, pp 46-54; Holmes Deposition, p. 58.)

Furthermore, there is sufficient evidence to show that the reason for terminating the Plaintiff was a pretext and whether she should have been placed on a warning in the first instance, because Holmes admitted that she did not keep track of tardiness until after the first warning and it was not clear that the Plaintiff could not be out sick while she was on disciplinary action. (Holmes Deposition, pp. 83-85, 88-89, 167-168, 175.)

Page 17, Heading "F. Plaintiff Was Terminated For Violating The July 2000 Warning Plaintiff is "unable to successfully argue that her poor performance was pretext for disability discrimination."

*Plaintiff's argument*: The Plaintiff complained when the employer improperly issued warnings and placed her on probation, thus disputing Facts¶32, 39, 41-43. Plaintiff complained

18

to Holmes and Sisto, but they refused to discuss her disability and would not review her medical notes and records when presented. (Verified Amended Complaint ¶ 122 - 125.) Sisto refers to Plaintiff's efforts to discuss her disability during the May 23, 2000 meeting in which Sisto and Holmes issued the written warning, as not relevant. Thus, this fact constitutes an admission that the employer failed to properly investigate the charge of discrimination. (Sisto Deposition, pp. 99-102.) Plaintiff's counsel specifically advised the employer that by revoking Plaintiff's accommodations and improperly issuing warnings may violated the ADA. (Verified Amended Complaint, Exhibit 17.) Yet, the employer took no steps to remedy its discriminatory practices.

*Defendants' argument*: page 18 under subheading "1. The 1999 Performance Review - that "there is no reason to believe that Holmes or Sisto could have developed a discriminatory animus toward Griffith in the few short weeks she reported to them prior to her review, particularly when neither Holmes nor Sisto was familiar with Griffith's history of complaints to human resources, frequent absences, and need for accommodation." (Facts ¶24).

*Plaintiff's argument*: Here, Defendants argue inconsistently and against themselves. This statement makes out a case that the issuance of a warning was indeed a pretext, particularly if Defendants facts are taken as undisputed and taken together with deposition testimony of Sisto and Holmes having no record of absences prior to May 23, 2000 -- how could the first written warning reasonably be issued? Moreover, Scanlon testified that in a December 16, 1999 email she informed the Plaintiff after reviewing "the frequency of her absences and the company policy . . . She was satisfied that the incidences (absences) were unavoidable and (Plaintiff) has made up the most recent one by putting in hours on Saturday." (Scanlon Deposition, p. 147.) Scanlon further testified that company sick time policy is flexible and gives supervisors broad discretion.

Scanlon explained: "[t]his series of e-mails reflects a requirement that the department had that if an individual, at this time anyway, that if an individual was absent three or more times in any six-month rolling period, the department head required that the manager either take action or say it is okay." (Scanlon Deposition, pp. 147-148.)  When specifically asked: "So in this instance given this particular time frame, there was no action taken against Ms. Griffith?"  Scanlon replied: "Exactly.  I did not want action to be taken.  And this was my response to basically get a check mark to make it go away." (Scanlon Deposition, p. 148.)  Furthermore, project supervisors had discretion to re-assign projects when employees were out sick, without obtaining the approval of a department head, like Holmes did in June of 2000 when the Plaintiff was out on FMLA. (Holmes Deposition, pp. 141-142.)


Page 19, Heading "G. Plaintiff Must Allege Violations Of The FMLA Under The Statutes Exclusive Remedial Structure  Defendants allege that "as part of her claim of disability discrimination in violation of the ADA, Griffith asserts that Defendants' terminated her for use of the FMLA related leave. (Facts ¶52f)."

    *Plaintiff's argument*:  Defendants cite pages 341-342, 345 taken from Griffith's deposition.  On page 341 line 23, the Defendants question: "You felt it was an incidence of racial discrimination that you were terminated for using your FMLA leave?"  (Objection - calls for a legal question.)  However, Plaintiff clearly states: "No, I didn't say that."  In no instance on the pages cited did the Plaintiff state that she believes she was terminated for her use of FMLA.  In fact, the Plaintiff testified about sick time and another employee telling her "that his doctor wrote a note to the company requesting that he be allowed to leave work any time he felt the need for it." (Griffith Deposition,  page 342, line 12 -14.)  Plaintiff's point is further clarified when

reading the explanation of the question presented in pages 342 to 349, attached to Defendants'

Declaration Exhibit A3. The Plaintiff testified that "OneBeacon had a sick time policy, short-

term disability, which was five days or more, and then long-term disability that clicked in off the

short-time disability phase. So, I believed that I was covered under those three plans, sick time

plans." Furthermore, the fact that the Plaintiff was terminated for being out sick and that

Plaintiff was placed on probation in the first instance is challenged as a pretext, because Holmes

admitted that she did not keep track of tardiness until after the first warning and it was not clear

that the Plaintiff could not be out sick while she was on disciplinary action. (Holmes Deposition,

pp. 83-85, 88-89, 167-168, 175.) Here, the testimony pf Holmes considered, is strong evidence

that supports a finding that the reason given for the issuance of written warnings and the

termination of the Plaintiff was, indeed, a pretext.

Page 21, Heading "III. Plaintiff's Claims For Retaliation As A Matter Of Law

Defendants state the Plaintiff "cannot prove that 'the adverse action [was] taken for the purpose

of retaliating' against her, she 'has failed to establish a trial worthy issue' on the question of

retaliation," as follows below.

  *Plaintiff's argument:* In general, adverse employment actions include "demotions,

disadvantageous transfers or assignments, refusals to promote, unwarranted negative job

evaluations, and toleration of harassment by other employees." *Hernandez-Torres v.

Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir. 1998*); see also Wyatt v. City of Boston,*

35 F.3d 13, 15 (1st Cir. 1994). Likewise, "work sabotage, exclusion, denial of support, and

humiliation [that] can in context contribute to a hostile work environment[.]" *O'Rourke v. City of

Providence,* 235 F.3d 713, 730 (1st Cir. 2001). "[U]nder Title VII, subjecting an employee to a

hostile work environment in retaliation for protected activity constitutes an adverse employment action[.]" *Noviello v. City of Boston*, 398 F.3d, 76, 91 (1st Cir. 2005). Accordingly, the plaintiff may recover under a hostile work environment theory upon showing that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 84 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)).

Page 22, Heading "A. Plaintiff's Claims For Retaliatory Creation Of A Hostile Work Environment Are Facially Defective because two paragraphs in the Verified Amended Complaint allege to base retaliation on the basis of disability.

*Plaintiff's argument*: Plaintiff has plead retaliation claims in the following counts: Verified Amended Complaint ¶¶ 154 - 158, Count Two - Retaliation Under ADA; Verified Amended Complaint ¶¶ 165 - 169, Count Four - Retaliation Under Title VII; Verified Amended Complaint ¶¶ 174 - 178, Count Six - Retaliation Under AEDA; Verified Amended Complaint ¶¶ 195 - 199, Count Nine - Retaliation Under ADA (against defendants CU and CGU only); Verified Amended Complaint ¶¶ 206 - 210 Count Eleven, Retaliation Under Title VII (against defendants CU and CGU only). In paragraph 167, Plaintiff inadvertently used the word "disability" as opposed to "race," which is a harmless error because the re-incorporation of facts and properly plead elements in each count infer the correct usage. Likewise, in paragraph 176, Plaintiff inadvertently used the word "disability" as opposed to "age," which is a harmless error because the re-incorporation of facts and properly plead elements in each count infer the correct usage. *Clorox Co. v. Proctor & Gamble Comm. Co.,* 228 F.3d 24, 30 (1st Cir. 2000) (dismissal is

22

warranted "where claim's defects cannot be cured by amendment.")

Page 23, Heading "B. Plaintiff's Claims of Retaliatory Discharge Are Facially Defective

The Defendants argue that retaliation claims under Title VII and ADEA improperly allege disability.

    *Plaintiff's argument*: Plaintiff re-incorporates her argument presented in this Memorandum to Defendants' page 22 argument. The defects may be readily cured with an amendment, as argued in the prior argument.

Page 23, Heading "C. Plaintiff Has Failed To Meet Her Burden Of Proof On Her Claims Of Retaliation Under The ADEA, Title VII, And The ADA because allegedly she only testified to three incidents of retaliation at her deposition.

    *Plaintiff's argument*: Plaintiff re-incorporates her argument on this issue as presented on page nine, the second paragraph, and page twenty thru twenty-one of this Memorandum. In no place within Defendants' argument, do Defendants address the fact that on or about April 1999, Scanlon demoted the Plaintiff from Sr. Programmer Analyst to Programmer Analyst II.

    *Defendants' argument*: page 24 under subheading "1. Plaintiff's Retaliation Claims are Time-Barred" - allegedly the plaintiff may not "raise a retaliation claim regarding the August 1999 request to unpack crates."

    *Plaintiff's argument*: The Plaintiff invokes the continuous violation doctrine, as previously raised in her argument on page eleven of this Memorandum.

    *Defendants' argument*: page 24 under subheading "2. Plaintiff Cannot Establish A Causal

Connection Between ADEA Protected Activity And An Adverse Employment Act because

Plaintiff "never complained or communicated to OneBeacon or any of its employees of her

concern that she was suffering from age discrimination. (Facts ¶55)

*Plaintiff's argument*: Defendants acknowledged that the filing of the 1997 charge of age

discrimination is a protected activity. It is a disputed fact whether the Supervisors learned of the

Plaintiff's law suit and complaints of discriminatory practices, because Scanlon testifies that she

learned of the discrimination charge in the summer of 1999 during a human resource meeting in

which she and Holmes were present. (Scanlon's Deposition, pp. 55-56.) Furthermore, Plaintiff

has asserted a claim of disparate impact.

*Defendants' argument*: page 25 under subheading "3. Mounting A Challenge To A

Performance Review Is Not An Act Protected By Title VII OR The ADA - because Plaintiff's

testified that she was retaliated against when she did not receive her raise. (Facts ¶56A) (Note

this fact contradicts Defendants claim that she only testified about three incidents of retaliation.)

*Plaintiff's argument*: Sisto denies knowing about raise not being issued is a disputed fact

because Plaintiff's counsel sent Sisto a letter in August of 2000, subsequent to Sisto failing to

respond to Plaintiff's e-mails. (Verified Amended Complaint, ¶¶ 76 - 77; Exhibit 18.) Plaintiff

further rebuts Facts ¶23, as Scanlon testified that Plaintiff reported to Holmes in 1999, who

reported to Sisto. (Scanlon Deposition, pp 57-59.) Sisto testified that he talked to each person in

the group at least once every two months, from 1998 to 2000, including the Plaintiff. (Sisto

Deposition, pp. 55-56.) There is ample time for the named supervisors to develop a

discriminatory animus because the Plaintiff was under the Supervision of Holmes and Scanlon in

1999; and, Scanlon recalls a meeting with Human Resources in the summer of 1999 when they

24

learned about the discrimination law suit the Plaintiff had filed against the employer. (Scanlon Deposition, pp. 55-56.) Furthermore, rebutting Defendants' claim that Plaintiff had a history of tardiness, Holmes and Scanlon testified that there was no system in place for tracking arrival times, the employees arrival time was under "the honor system." (Holmes Deposition, pp. 83-85, 88-89; Scanlon Deposition, pp 57-59, 64-66, 76.)

*Defendants' argument*: page 26 under subheading "4. The Assignment Of Occasional Tasks Outside Of Ones Immediate Job Description Is Not Per Se Retaliation

*Plaintiff's argument*: The Plaintiff invokes the continuous violation doctrine previously raised twice in this Memorandum with regards to Defendants' arguments on retaliation. It is a disputed fact as to when Scanlon and Holmes learned of the law suit and complaints of discriminatory practices. (Scanlon Deposition, pp. 55-56.) The Plaintiff did testify that she told Holmes that she "shouldn't be lifting that -- those crates," and she did tell her why. (Griffith Deposition, pp. 258-259.) Any reference to notes to a psychologist is privileged and not relevant or material as facts are not logically connected to an issue; further the notes are taken out of context and Defendants omitted part of the note that clarifies the notation.

*Defendants' argument*: page 28 under subheading "5. Plaintiff was terminated for violating the July 2000 Warning.

*Plaintiff's argument:* The Plaintiff did not believe that she should not have been terminated because she had a FMLA certificate. This quote is taken out of context, quoting line 2 through line 5 on page 271, when in fact the Plaintiff's testimony runs from line 2 through line 23 on page 271. Further, the Defendants take out of context a line of questioning, in part of a fourteen-hour deposition, in which they had the Plaintiff acknowledge that the written warnings

were issued. This in no way implies that the Plaintiff agreed with the warnings, as she complained of the warning at the time of the meetings and her counsel wrote a letter to request the warnings that triggered a probationary period be terminated and removed from her personnel file. (Verified Amended Complaint, Exhibit 17.) Further, Sisto testifies that the Plaintiff did dispute the written warning, and more specifically she did complain that "she was being harassed, treated unfairly, given assignments to projects she's unfamiliar with, learning program languages on her own, but assignments given to her were not related, other staff members stroll in at different times during the day. That was totally -- all this was unrelated to Bernadine's attendance issues. That is what we were to talk about, her attendance, being late. It was not to talk about her being harassed, her being treated unfairly. If she had these issues, she could have went to HR and discussed them with HR, and then HR would have contacted me, and then I would have pursued it that way." (Sisto Deposition, pp. 93-109.) Likewise, at the July 27, 2000 final warning meeting, Sisto recalls: "[a]gain, don't know the specifics, don't recall the specific words or what was said, but she brought up issues that she has a disability, she has -- I think her illness was heart problem related. It was revolved around that. Spoke of other issues with CU or OneBeacon that happened with other associates. Again, she kind of went into one issue after another, and as I recall, we let her speak for a couple of minutes, and then basically the conversation was not relevant or pertinent to what we, you know, what we established the meeting for, and we just said, "The meeting is over," basically." (Sisto Deposition, pp 113-114.)

*Defendants' argument*: page 29 under subheading "6. Griffith Cannot Establish That She Was Subjected To Behavior So Severe Or Pervasive As To Create A Hostile Work Environment."

*Plaintiff's argument:* Defendants' argument states "Griffith alleges that she experienced a racially hostile work environment in retaliation for engaging in acts protected by Title VII for which Defendants are liable; however it is unclear in what protected behavior Griffith engaged, and no racially hostile work environment existed. (Complaint ¶ 208)."

*Plaintiff's argument:* Paragraph 208 averred: "Defendants creating a hostile work environment on the basis of her race has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." Here, Defendants attempt to argue that the racial slur "tar baby" is not offensive. However, Defendants' correspondence summarizing the events that transpired concerning this incident describe the incident as being "insensitive," and specially claim: "[w]hen Ms. Griffith complained, an investigation confirmed that the remark had been made, but that Freeman had not intended a racial insult. Nonetheless, because the remark showed an insensitivity to issues which affected his effectiveness as a supervisor, Freeman was removed from his position. He was reassigned to a non management role in another department." (Verified Amended Complaint, Exhibit 4, paragraph 8.) The MCAD, however, found in its probable cause finding that Freeman was not reassigned. (Verified Amended Complaint, Exhibit 23.) Any reference to notes to a psychologist is privileged and not relevant or material as facts are not logically connected to an issue; further the notes are taken out of context and Defendants omitted part of the note that clarifies the notation.

*Defendants' argument*: page 31 heading "IV. Plaintiff's Breach Of Contract Claim Fails As A Matter Of Law Because She Admits, At All Times, To Being An At-Will Employee.

*Plaintiff's argument:* In pertinent part, Defendants argue that no written contract existed

and that Plaintiff is an at-will employee.. However, the Court may find that (1) the Defendants,

failure to tender the promised $1,900.00 pay raise and the amount of fringe benefit's the Plaintiff

would have received constituted a breach that arose out of an oral contract; or, (2) the Plaintiff

was terminated in bad faith. Good faith is implied in contracts terminable at-will. "`In *every*

contract there is an implied covenant that neither party shall do anything which will have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract,

which means that in *every* contract there exists an implied covenant of good faith and fair

dealing' [emphasis supplied]. *Uproar Co.* v. *National Broadcasting Co.,* 81 F.2d 373, 377 (1st

Cir.), cert. denied, 298 U.S. 670 (1936), quoting from *Kirke La Shelle Co.* v. *Paul Armstrong*

*Co.,* 263 N.Y. 79, 87 (1933)." *Druker* v. *Roland Wm. Jutras Assocs.,* 370 Mass. 383, 385 (1976).

Restatement (Second) of Contracts § 231 (Tent. Drafts Nos. 1-7 (1973). 5 S. Williston, Contracts

§ 670 (3d ed. 1961).


The below-listed Facts corresponds to paragraphs numbered in the Defendants' Statement

of Undisputed Material Facts. These Facts are not cited in Defendants' Memorandum of Law

and, therefore, are not in issue. Consequently, these Facts are not relevant and/or material.

Further, the Plaintiff asserts specifically to each Fact:

**Fact ¶ 2** - Not relevant.

**Fact ¶ 3** - Not material.

**Fact ¶ 5** - Mischaracterization of Plaintiff's testimony. Document speaks for itself, as attached
      to the Verified Amended Complaint, Exhibit 2, August 20, 1996 Bagdoian letter to
      Battistini, Vice President of CU.

**Fact ¶ 8** - The document speaks for itself, as attached to the Verified Amended Complaint,

Exhibit 3, October 25, 1996 Moynihan Memorandum to Plaintiff and Freeman.

**Fact ¶ 12** - Disputed by Verified Amended Complaint, Exhibit 22, December 6, 1999 Probable Cause Finding.

**Fact ¶ 15** - Not material.

**Fact ¶ 17** - Objection - privilege; Plaintiff renews her objections raised in Opposition to Rule 35 Examination.

**Fact ¶ 20** - Objection - privilege; Plaintiff renews her objections raised in Opposition to Rule 35 Examination. Mischaracterization of Plaintiff's testimony.

**Fact ¶ 33** - Although these two facts are not relevant, the two facts as presented do not reflect Plaintiff's testimony. Mischaracterization of Plaintiff's testimony.

**Fact ¶ 38** - Objection - a privilege; Plaintiff renews her objections raised in Opposition to Rule 35 Examination.

**Fact ¶ 47** - Disputed by Verified Amended Complaint ¶¶ 135 - 140, and Answer to Defendants' Interrogatory Number 15, which states in pertinent part: "The Defendants retaliated against me and barred me from retirement unless I dismissed my charges of discrimination. (See Exhibits 20 - 22 of the Complaint). But for the wrongful termination, I would have realized additional contributions and growth to my retirement accounts that the Company offered in my 2000 CGU Benefit Plans manual when I was terminated. I believe Joan Geddes of OneBeacon told my attorney that I would only receive retirement if I dismissed the then-pending charges of discrimination. I am demanding to be rehired and then allowed to take early retirement."

**Fact ¶ 51** - Disputed by Verified Amended Complaint ¶ 68 and ¶ 126, and Exhibit 17, August 10

2000 Cristin L. Rothfuss letter to Michael A. Siston at CGU.

**Fact ¶ 54** - Same Fact repeated verbatim as Fact ¶ 51.

**Fact ¶ 58** - Disputed by Verified Amended Complaint - AEDA Count Six

**Fact ¶ 59** - Same Fact repeated verbatim as Fact ¶ 51.


## CONCLUSION

Accordingly, the Plaintiff, Bernadine T. Griffith, respectfully requests this Honorable

Court deny the Defendants' Motion for Summary Judgment and issue an order for sanctions

pursuant this Court's inherent powers and Rule 37(b)(2) entering Default Judgment against the

Defendants with regard to Plaintiff's Verified Amended Complaint; schedule a hearing on

damages, including attorney's fees and expenses; render a finding that the Defendants are in

contempt of court for their failure to obey the Court's September 14, 2005, March 15, 2005 and

July 27, 2005 Orders; and in addition thereto, order Defendants and/or its attorneys both to pay

the reasonable expenses, including attorney's fees, and afford Plaintiff fourteen (14) days from

the entry of this order to file a Motion for Attorney's Fees and Costs.


Respectfully submitted,
BERNADINE T. GRIFFITH
By her Attorney,


Date: 12/13/05

Kathleen J. Hill        BBO# 644665
LAW OFFICE OF KATHLEEN J. HILL
60 State Street, Suite 700
Boston, MA 02109
617.742.0457 (O) / 617.742.4508 (F)

## CERTIFICATE OF SERVICE

I, Kathleen J. Hill, certify that I served a true and accurate copy of the foregoing

Plaintiff's Opposition to the Defendants' Motion for Summary Judgment on the counsel of

record: *Keith B. Muntyan and Leah M. Moore*, of Morgan, Brown & Joy, Two Hundred State

Street, 11th Floor, Boston, Massachusetts 02109 by pre-paid U.S. Mail on this 13th day of

December 2005.

Kathleen J. Hill          BBO# 644665

## INDEX

| Exhibit No. | Description |
|---|---|
| 1 | Deposition Transcript of Monica Scanlon |
| 2 | Deposition Transcript of Karen Allen Holmes |
| 3 | Deposition Transcript of Michael A. Sisto |
| 4 | Deposition Transcript of Bernadine T. Griffith |