UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
**BERNADINE T. GRIFFITH**                   )
                                            )
            Plaintiff,                      )   C.A. No. 03-CV-12573-EFH
                                            )
v.                                          )
                                            )   SECOND REPLY
**ONEBEACON INSURANCE COMPANY,**            )   MEMORANDUM IN SUPPORT
**ONEBEACON AMERICA INSURANCE**             )   OF DEFENDANTS' MOTION
**COMPANY, MICHAEL A. SISTO, and**          )   FOR SUMMARY JUDGMENT/
**KAREN ALLEN HOLMES**                      )   DEFENDANTS' MOTION
                                            )   FOR RECONSIDERATION
            Defendants.                     )
_____)

Defendants OneBeacon Insurance Company and OneBeacon America Insurance Company (together, "OneBeacon" or "Defendants"), hereby submit their Reply Memorandum/Motion for Reconsideration in response to Plaintiff Bernadine T. Griffith's ("Griffith" or "Plaintiff") Second Opposition[1] to Defendants' Motion for Summary Judgment.

**PRELIMINARY STATEMENT**

In lieu of addressing the legal arguments advanced in Defendants' Motion for Summary Judgment, Plaintiff's First Opposition papers addressed discovery issues. This strategic decision by Plaintiff's waived her right to argue in opposition to the arguments and authorities presented in Defendants' Motion for Summary Judgment. Nevertheless, at the Court's request, Plaintiff filed a Second Opposition where she addressed, in part, the arguments raised in Defendants' Motion for

---

[1] Plaintiff has filed two Opposition Memoranda in response to Defendants' Motion for Summary Judgment. Plaintiff's First Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment will be denoted "First Opposition." Plaintiff's Second the Opposition to Defendants' Motion for Summary Judgment will be denoted "Second Opposition." The phrase "Motion for Summary Judgment" or "Defendants' Motion" will refer to Defendants' Motion for Summary Judgment and supporting papers unless a specific document filed in support of the Motion is referenced.

Summary Judgment.  In her Second Opposition, Plaintiff, for the second time, failed to contest Defendants' Statement of Facts and only partially addressed Defendants' arguments.  Defendants requested leave to reply to the Second Opposition, and though leave to reply was granted, the Court ruled on Defendants' Motion for Summary Judgment before the deadline for filing of Defendants' Second Reply.

Defendants respectfully request the Court reconsider[2] its denial of summary judgment on Plaintiff's remaining claims for race and disability discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, ("Title VII") and Section 107(a) of the Americans with Disabilities Act, 42 U.S.C. § 12117 ("ADA"), respectively, as against OneBeacon because Plaintiff : 1) attempts to create a question of fact by contradicting her own deposition testimony; 2) has failed to meet her burden of proof on her race and disability discrimination claims under both a pretext and mixed motive analysis; 3) has failed to cite any legal precedent to support her claim of a hostile work environment; and 4) has failed to articulate a legally cognizable retaliation claim under the mixed motive analysis.

**OUTLINE OF BRIEF**

In an effort to provide the Court with a more clear understanding of the arguments addressed in Defendants' Reply, the following outline will summarize the arguments made and the location of those arguments:

I.    Plaintiff waived her right to oppose Defendants' Motion for Summary Judgment – twice; pp. 3 - 4

II.   Plaintiff failed to meet her burden under the summary judgment standard; pp. 4 - 6

---

[2]  Defendants will only address the new issues presented in Plaintiff's Second Opposition and refer the Court to its First Reply and Opposition to Plaintiff's Motion for Default Judgment for argument addressing pages 1-7 of the Second Opposition as they appear to be an exact replica of those arguments advanced in Plaintiff's First Opposition and Motion for Default.

2

> III.   Plaintiff failed to meet her evidentiary burden on her claim of racial discrimination; pp. 6 - 16
>
> IV.   Plaintiff failed to meet her evidentiary burden on her hostile work environment claim; pp. 15-16
>
> V.   Plaintiff failed to meet her evidentiary burden on her claim of disability discrimination; pp. 16-20
>
> VI.   Plaintiff failed to meet her evidentiary burden on her claims of retaliation in violation of Title VII and the ADA; pp. 20-21

## FACTS

In support of their Motion for Summary Judgment, Defendants submitted their Statement of Undisputed Material Facts ("Defendants' Facts") which contains the facts pertinent to the present motion. By virtue of Plaintiff's continued failure to controvert Defendants' Facts in accord with Local Rule 56.1, Plaintiff has admitted them - twice. *See Mass. Eye and Ear Infirmary v. Novartis Ophthalmics, Inc. and QLT*, 353 F.Supp.2d 170, 173-74 (D.Mass. 2005) (Harrington, J.) ("Under District of Massachusetts Local Rule 56.1, a material fact is deemed admitted when the nonmoving party does not contest facts set forth in the moving party's statement of undisputed facts."); *Stonkus v. City of Brockton Sch. Dept.*, 322 F.3d 97, 102 (1st Cir. 2003). Accordingly, Defendants are entitled to summary judgment on Plaintiff's remaining claims.

## REPLY

### I.   PLAINTIFF WAIVED ANY OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's First Opposition failed, entirely, to address any of the arguments raised in Defendants' Motion for Summary Judgment and instead, addressed an alleged discovery dispute never brought to Defendants' attention until it was raised in the First Opposition over two months after the close of discovery. "A party who aspires to oppose a summary judgment motion must spell

3

out his arguments squarely and distinctly, or else forever hold his peace." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (citing *Sammartano v. Palmas del Mar Prop.*, 161 F.3d 96, 97-98 (1st Cir. 1998); *Paterson-Leitch Co. v. MA Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir.1988)).  Despite the fact that the First Circuit has definitively ruled that a party must address every issue or risk waiver, at no time did Plaintiff realize her failure and request leave of Court to file a conforming opposition addressing the arguments and facts as alleged in Defendant's Motion.  Only upon being <u>ordered</u> by the Court to do so did Plaintiff address <u>any</u> of the legal arguments advanced in Defendants' Motion for Summary Judgment.  Even now, she fails to show Defendants' arguments are insufficient.

Further, the arguments in Plaintiff's Second Opposition fail to conform with Local Rule 56.1. *See id.* ("district court is free to disregard arguments that are not adequately developed") (*citing McCoy v. MIT,* 950 F.2d 13, 22 (1st Cir.1991) (internal citations omitted)).  Plaintiff's failure, on two separate occasions, to file a conforming opposition shifts the burden to "the Court [to] peruse the record with a very critical eye and determine whether the moving party has met its burden of demonstrating undisputed facts that will entitle it to judgment as a matter of law" without the benefit of an opposition. *Gotay Sanchez v. Pereira*, 343 F.Supp.2d 65, 70 (D.P.R. 2004) (citing *Corretjer Farinacci v. Picayo,* 149 F.R.D. 435 (D.P.R. 1993)).  This Defendants have indisputably done as shown above.

### II.   PLAINTIFF FAILED TO MEET HER BURDEN UNDER THE SUMMARY JUDGMENT STANDARD

Though Griffith previously admitted Defendants' Facts in her First Opposition, in her Second Opposition, Griffith attempts to dispute those admitted facts by relying upon her Verified Amended Complaint ("Verified Complaint").  To the extent a verified complaint satisfies the standards set forth in Fed. R. Civ. P. 56(e), it may serve as the functional equivalent of an affidavit. *Strahan v. Frazier*, 156 F.Supp.2d 80, 85 FN5 (D.Mass. 2001) (Young, J.); *Sheinkopf v. Stone*, 927 F.2d 1259, 1262-63

4

(1st Cir. 1991). Assuming, *arguendo*, that Griffith's Verified Complaint meets Rule 56(e)'s standards, the First Circuit has definitively ruled that a plaintiff cannot create a disputed issue of fact and avoid summary judgment by submitting a declaration that contradicts her own sworn deposition testimony. *See Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 44, 54 (1st Cir. 2000); *Kauffman v. Puerto Rico Tele. Co.*, 841 F.2d 1169, 1172-73 (1st Cir. 1988) (sworn allegations in verified complaint treated as affidavit were insufficient to withstand a motion for summary judgment). This, however, is exactly what Plaintiff has attempted to do.

    **A.**     **PLAINTIFF ATTEMPTS TO DISPUTE HER SWORN DEPOSITION TESTIMONY**

During her deposition, Griffith gave "clear answers to unambiguous questions." *See Colantuoni v. Calcafni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994) (internal citations omitted). Nevertheless, she now suggests that the Court should ignore her direct testimony, testimony that is fatal to the remaining claims, in favor of contradictory language drafted by her attorney. The suggestion that Griffith's own contradictory statements somehow create a genuine issue of fact capable of overcoming summary judgment demonstrates that Plaintiff has no "definite, competent evidence" sufficient to warrant trial on the merits. *See Kaltman-Glasel v. Dooley*, 228 F.Supp.2d 101, 108 (D.Conn. 2002) (granting summary judgment because plaintiff cannot create a genuine issue of material fact by contradicting her own testimony); *McKenzie v. Potter*, 2004 WL 1932766 (D.Mass. 2004) (Woodlock, J.) (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. den'd*, 504 U.S. 985 (1992) and *Calero-Cerzo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

    **B.**     **PLAINTIFF FAILS TO GO BEYOND THE ALLEGATIONS IN HER PLEADINGS**

By virtue of her reliance upon the Verified Complaint to overcome summary judgment, Griffith has failed to adhere to the most basic principles in Rule 56(e) requiring a plaintiff "not rest on the 'mere allegations or denials of h[er] pleading.'" *Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 413 (1st Cir. 2000) (*quoting Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96

F.3d 10, 14 (1st Cir. 1996); *see Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995), *cert. den'd*, 516 U.S. 1113 (1996)); Fed. R. Civ. P. 56(e).  Because "[t]he evidence manifesting the [genuine] dispute must be 'substantial,' going beyond the allegations of the complaint,'" "in the summary judgment posture, [Griffith] may not merely rely on the allegations set forth in the [Verified] Complaint.  Rather, [she] must satisfy h[er] burden of production by setting forth specific evidence which illustrates that a genuine issue of material fact exists." *Euromotion, Inc. v. BMW of North America, Inc.*, 136 F.3d 866, 869 (1st Cir. 1998) (*quoting Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. den'd*, 425 U.S. 904 (1976)); *see Storlazzi v. Bakey*, 894 F.Supp. 494, 500 (D.Mass. 1995), *aff'd mem.*, 68 F.3d 455 (1st Cir. 1995).  Because Griffith's Opposition relies solely upon her Verified Complaint, she has failed to satisfy her burden of proof under Rule 56(e), and her claims fail as a matter of law. *See id*.

### III. PLAINTIFF FAILED TO MEET HER EVIDENTIARY BURDEN ON HER CLAIM OF RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

In her Second Opposition, Plaintiff contends for the first time that the *Price Waterhouse* mixed motive analysis applies; for all intents and purposes conceding that she is unable to sustain a case under the *McDonnell Douglas* standard. (Second Opposition, pp. 8-9).  Though Defendants strongly disagree with Plaintiff's contention, instead arguing that the *McDonnell Douglas* pretext[3] analysis applies, no matter the standard, Plaintiff's claim for racial discrimination fails as a matter of law because Plaintiff is incapable of substantiating her evidentiary burdens.

#### A. MIXED MOTIVE ANALYSIS

A "mixed-motive analysis is appropriate where evidence exists that both legitimate [non-discriminatory] and illegitimate [discriminatory] factors played motivating parts in [an] adverse employment action." *Rossiter v. Potter*, 2005 WL 1288063 * 3 (D.Mass. 2005) (*citing Price*

---

[3] Defendants refer the Court to its Motion for Summary Judgment for detailed analysis of Plaintiff's claims under the *McDonnell Douglas* pretext.

6

*Waterhouse v. Hopkins*, 490 U.S. 228, 241-42 (1989)).  It is applied in situations involving both direct and circumstantial evidence of discrimination. *See id*. (*citing Desert Palace, Inc. v.* Costa, 539 U.S. 90, 101-102 (2003)).  "The plaintiff in a mixed motive case bears the initial burden of demonstrating that 'an illegitimate factor played a substantial role in a particular employment decision.'  The burden then shifts to the employer to 'prove that it would have made the same decision'" even if it had not considered the illegitimate, discriminatory factor. *Id*. (*citing Vesprini v. Shaw Indus., Inc.*, 221 F.Supp.2d 44, 56 (D.Mass. 2001), *aff'd*, 315 F.3d 37 (1st Cir. 2002)); *Vesprini*, 315 F.3d at 41 (internal quotations omitted).  Plaintiff has not met her initial burden.

During her deposition, Plaintiff recounted four situations she believed were motivated by racial discrimination.  Those alleged situations included a reference by Edmund Freeman ("Freeman") to a tar baby; the 1999 performance review; failure to receive a $1900 raise; and her termination. (Facts, ¶ 49; Motion, p. 10).  Plaintiff's Second Opposition makes reference to each of the four instances of alleged discrimination and includes a fifth example – an alleged comment by Mr. Freeman that he did not want to work with Plaintiff, a statement Plaintiff attributed to a different non-managerial co-worker during her deposition. (Facts, ¶ 49(f)).

   1. PLAINTIFF'S RACIAL DISCRIMINATION CLAIM FAILS BECAUSE SHE SUFFERED NO ADVERSE EMPLOYMENT ACTION AS A RESULT OF THE ALLEGED DISCRIMINATORY BEHAVIOR

Though required to identify an adverse employment action for each alleged act of discrimination, Griffith has failed to identify the adverse action she suffered as a result of the comments made by Freeman and her 1999 performance review.

   a. THE COMMENTS BY FREEMAN

Throughout her Second Opposition, Griffith continually suggests that she suffered discrimination as a result of overhearing Freeman's use of the term "tar baby" in a one time conversation with another employee about a computer program.  Plaintiff's continued mischaracterization of this comment is disingenuous.  Only in her Verified Complaint and her

7

Second Opposition, does Griffith argue that Freeman "called her a tar baby." (Verified Complaint, ¶ 162; Second Opposition., pp. 9, 13). When asked the question directly at deposition, without the benefit of re-characterization by her attorney, Griffith testified that Freeman was talking to another employee about a computer program that in no way involved her and that Griffith was simply sitting in an area when she overheard this conversation. (Facts, ¶ 49(f)).

Nevertheless, even if Griffith's exaggerated version of the events involving Freeman were true, whether Freeman used the term tar baby in a conversation with another employee and glanced at her as he said it, does not create a *genuine* issue of *material* fact. *See Rossiter*, 2005 WL 1288063 at *1 ("a factual issue is 'material' where it 'has the potential to alter the outcome of the suit under the governing law.'") (*citing Blackie v. State of Maine*, 75 F.3d 26, 721 (1st Cir. 1996)). While Freeman's use of the term tar baby may lend itself to a hostile work environment claim (Defendants discuss why the hostile work environment claim is unsuccessful at Section III. B. *infra*), his alleged discriminatory intent is immaterial in a discrimination claim because Griffith can point to no adverse employment action she suffered at the hands of Freeman as a result of the tar baby comment. *See Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir. 2003) (plaintiff must present evidence that "there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias"). Indeed, Griffith testified that the next example of race discrimination she suffered while at OneBeacon occurred in January 2000 – over one thousand one hundred fifty (1,150) days and three supervisors after Freeman used the term "tar baby" in October 1996 – demonstrating that no adverse action resulted from Freeman's alleged actions. *Cf Burton v. City of Littletown*, 426 F.3d 9, 20 (1st Cir. 2005) ("even if repugnant remark was made, no evidence establishes a nexus between the termination of [plaintiff's] employment and any discrimination by the defendants.").

Further, prior to submitting her Second Opposition, Griffith contended that it was another co-worker, Suzanne Harris Walker ("Harris Walker"), who informed her that she did not want to work

8

with Griffith. (Facts, ¶ 49(f)). At no time during her four day deposition did Griffith attribute this comment to Freeman. And for good reason; for there was no reason for Freeman to make such a statement since, as Griffith's manager, the work he completed in a one on one situation with Griffith would have been minimal at best. Nevertheless, even if Freeman did made such a statement, the record is devoid of any suggestion that Griffith suffered an adverse employment action as a result of the statement.

      b.  THE 1999 PERFORMANCE REVIEW

Plaintiff also argues that her 1999 performance review is evidence of racial discrimination because it was issued by Plaintiff's current supervisor, Karen Holmes, but included the comments of Plaintiff's former supervisor Monica Scanlon days after Scanlon left OneBeacon. (Second Opposition., pp. 13-14). In an effort to overcome summary judgment, Griffith suggests that the percentage of time she reported to Scanlon in 1999 and the percentage of time she reported to Holmes in 1999 are disputed facts that warrant a trial. *Id.* This suggestion demonstrates Griffith's fundamental misunderstanding of the summary judgment standard because the percentage of time Griffith reported to each supervisor is irrelevant to the question of racial discrimination as evidenced by the 1999 performance review.

Griffith is incapable of sustaining a case of discrimination based upon the 1999 year end review because, like the situation with Freeman, Plaintiff has failed to articulate what adverse employment action she suffered as a result of the review. *See Hillstrom*, 354 F.3d at 31. Assuming that the 1999 performance review was negative, a fact Griffith fails to prove, no where in her Second Opposition does she contest the First Circuit's decision in *Keeler* that a negative performance review, alone, is not an adverse employment action. *See Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 10 (1st Cir. 2001). Griffith's testimony and Verified Complaint confirm that once she disputed the "improvement needed" rating, Holmes and Sisto removed it from her review and rated her performance proficient – a reality that cripples Griffith's assertion that she suffered an adverse

employment action. By failing to distinguish *Keeler* and demonstrate why the 1999 review, on its face, is an adverse employment action, Griffith's claims based upon the review fail as a matter of law. *See Hillstrom*, 354 F.3d at 31.

        2.        PLAINTIFF'S RACIAL DISCRIMINATION CLAIM FAILS BECAUSE SHE OFFERS NO EVIDENCE TO SUPPORT DEFENDANTS' ALLEGED DISCRIMINATORY INTENT

Assuming a Court would view each alleged instance of discrimination as an adverse employment action, to mount a successful claim under a mixed motive analysis, Griffith must link some evidence of discriminatory motive to each adverse employment action she allegedly suffered. *See Burton*, 426 F3d at 20; *Ostrowski v. Atlantic Mutual Ins. Co.*, 968 F.2d 171, 182 (2d Cir. 1992). Yet Griffith's Second Opposition relies entirely upon stray remarks and the alleged adverse acts themselves to establish discriminatory motive; a strategy the Courts have expressly renounced. *See Rossiter*, 2005 WL 1288063 * 4 ("'stray workplace remarks' as well as statements made by nondecisionmakers are insufficient") (*citing Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir. 2001) and *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir. 1998)). Because Griffith's "evidence" fails to reflect a discriminatory attitude, Griffith is incapable of demonstrating that that the adverse employment actions were motivated by the illegitimate factor of racial discrimination, and her claim fails as a matter of law. *See Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 580 (1st Cir. 1999) (burden shifts to defendant only after plaintiff demonstrates that a proscribed factor played a motivating part in the adverse employment decision).

        a.        THE COMMENTS BY FREEMAN

Griffith's contention that Freeman's comments evidenced a discriminatory animus is pure supposition. Griffith testified that during the investigation immediately following her complaint to human resources regarding Freeman's use of the term tar baby, she was told Freeman did not realize the term had racist connotations and that he was only using the term to demonstrate a business point in a conversation she simply overheard. (Facts, ¶ 11). With respect to the allegation that Freeman

10

made a comment reflecting his desire to work with others (and disregarding Plaintiff's deposition testimony attributing the statement to Harris Walker), Griffith offers no rationale for her insistence that Freeman's alleged preference was *because of* her race. Instead, she assumes her own premise, essentially arguing that any person who opted not to work with her harbored racial animus.

        b.    THE 1999 PERFORMANCE REVIEW

Likewise, Griffith's Second Opposition contains no evidence that the decision to include additional information in her 1999 performance review was motivated by a desire to discriminate save the blanket assumption that Holmes and Sisto haphazardly discriminated against individuals they came across. Griffith even fails to suggest that Holmes or Sisto had knowledge of her complaints to human resources or to the Massachusetts Commission Against Discrimination ("MCAD"). Her allegations rest entirely upon her *(mis)*perceptions and are belied by the fact that Holmes and Sisto changed the review to indicate a higher rating when Griffith offered what they believed was a legitimate challenge to the assessment. (Facts, ¶ 27). Accordingly, Griffith lacks the evidence sufficient to demonstrate that her review was a result of a discriminatory motive.

        c.    THE $1900 RAISE

Griffith proffers no credible argument to connect her failure to receive a pay increase to evidence of Defendants' racial animus. Her entire argument hangs on the presumption that the only reason Sisto did not provide Griffith with the raise after he received the August 10, 2000 letter from Griffith's attorney, was Sisto's repressed bigotry. Griffith cites to no testimony suggesting Sisto could control how and when the $1900 raise was provided. Moreover, the Second Opposition offers no evidence to suggest Sisto intentionally ignored Griffith's request for a raise, a prerequisite his inclusion of an illegitimate factor in his decision not to act.

        d.    THE TERMINATION

True to form, Griffith's Second Opposition raises no argument regarding a racially discriminatory motivation for her termination. In lieu of arguing racially discriminatory motive

11

under the mixed motive analysis, Plaintiff argues that "Sisto having terminated the Plaintiff for being out sick is a pretext." (Second Opposition., p. 15). This argument fails for three significant reasons: 1) it analyzes the claim under the wrong standard, the *McDonnell Douglas* pretext analysis and not the *Price Waterhouse* mixed motive analysis Plaintiff insists is the proper standard just seven pages earlier; 2) it misquotes deposition testimony in an effort to create questions of fact; and 3) it assumes the conclusion it hopes to make.

In an effort to be as concise as possible, Defendants refer the Court to their Motion for Summary Judgment for an analysis of Plaintiff's race discrimination claim under the pretext analysis. Under the mixed motive analysis Plaintiff now argues, Griffith must demonstrate that racial animus was a <u>motivating factor</u> in her termination. Simply suggesting that racial animus was present is insufficient to survive summary judgment. *See Fernandes*, 1999 F.3d at 580 (*citing Price Waterhouse*, 490 U.S. at 241-42).

Plaintiff misstates Defendants' argument. Defendants contend that Plaintiff was terminated for violating the terms of her second and final written warning when she was absent from work for three days without giving prior notice. (Summary Judgment, p. 13). The Court should not be swayed by Griffith's attempt to muddy the waters regarding genuine questions of material fact. Though Scanlon and Holmes did testify that there was no system in place for tracking employee arrival times, their testimony referred to general attendance policies at OneBeacon. (Deposition of Karen Allen Holmes, pp. 83-85, 88-89, 91-93, 127-130 attached hereto as Exhibit A; Deposition of Monica Scanlon, pp. 37-38, 58 attached hereto as Exhibit B). Moreover, when Griffith's attendance became increasingly problematic, Holmes began to monitor Griffith's arrival and departure times. (Exhibit A, pp. 94-97). Griffith was placed on a strict attendance policy beginning on May 23, 2000, which she violated on July 27, 2000 causing issuance of the second and final written warning. (Facts, ¶¶ 32, 42). When Griffith violated the final written warning, she was terminated. (Facts, ¶ 42).

Accordingly, Griffith's contention that no system existed for tracking her attendance misstates deposition testimony.

Plaintiff continues her mischaracterization of evidence by suggesting that Sisto was confused regarding the parameters of Griffith's May 23, 2000 warning and her July 27, 2000 final warning. (Second Opposition, p. 15). Sisto, however, testified that his understanding of Griffith's written warning mirrored what was written on the warning. (Deposition of Michael Sisto, pp. 118-119 attached hereto as Exhibit C). More importantly, Griffith testified that <u>she</u> understood the written warning, but was absent from work in violation of the warning because she was under the misconception that her absences would not count for purposes of the second written warning because they were (she incorrectly believed) covered under the Family Medical Leave Act ("FMLA"). (Facts, ¶ 44).

Finally, Griffith assumes the conclusion she hopes to draw by arguing that Plaintiff's termination was discrimination without demonstrating a discriminatory motive. Though provided with the attendance records of her peers referenced in the Verified Complaint, Griffith's Second Opposition is devoid of a statistical or other comparative analysis suggesting Griffith's attendance standards were somehow different from her peers. In fact, Griffith offers no evidence other than her own inconsistent testimony that she was discriminated against to support her belief that Defendants acted with discriminatory motive. As a result, Griffith is incapable of meeting her evidentiary burden. *See Hillstrom*, 354 F.3d at 32 (granting summary judgment because plaintiff's disagreement with job expectations does not render those expectations evidence of discriminatory motive).

   3.  PLAINTIFF'S RACIAL DISCRIMINATION CLAIM FAILS BECAUSE DEFENDANTS WOULD HAVE TAKEN THE SAME ACTIONS REGARDLESS OF PLAINTIFF'S RACE

"To rebut a plaintiff's case-in-chief in a mixed-motive case, the employer must prove that 'it would have made the same decision even if it had not allowed [an illegitimate factor] to play [a motivating] role' in the employment decision." *Scott v. Sulzer Carbomedics, Inc.,* 141 F.Supp.2d

13

154, 173-74 (D.Mass. 2001) (*quoting Price Waterhouse*, 490 U.S. at 242, 244). Though Defendants do not concede that Griffith has met her evidentiary burden, were the Court to view each alleged instance of discrimination as an adverse employment action where discriminatory intent was evident, Defendants would have taken the same action regardless of Griffith's race.

        a.    THE TERMINATION

Defendants provided Griffith with ample opportunity to improve her attendance. They referenced it in her 1998 and 1999 performance reviews. (Facts, ¶¶ 16, 28). When Griffith's attendance and timeliness failed to improve, Holmes began to track Griffith's arrival and departure times and her absences. (Exhibit A, pp. 87-88). At the same time Holmes began tracking Griffith's attendance, Holmes also began tracking the attendance of Griffith's white female co-worker, Mary Ann Russo's. (Holmes pp. 87-88, 96-98). When Holmes' report on Griffith's attendance demonstrated that Griffith was violating OneBeacon's attendance policies, Griffith was placed on a formal written warning that required her to adhere to specific attendance policies and procedures for a period of ninety days. (Facts, ¶ 32). Holmes took the same steps for Russo. (Exhibit A, p. 97). Unlike Russo who adhered to the written warning, Griffith ignored it by taking an unplanned vacation day. (Facts, ¶ 41). As a result, Griffith was issued her second and final written warning. (Facts, ¶ 42). Shortly thereafter, Griffith violated the final warning, taking three days off without prior approval. (Facts, ¶ 45). In accord with the clear language on the face of the final warning, Griffith's employment with OneBeacon was terminated. *Id.*

The parallel experiences of Russo and Griffith demonstrate that Defendants would have taken the same action regardless of the race of the employee involved. No reasonable jury could find that Defendants relied upon a racially discriminatory motive in terminating Griffith for violating the final written warning.

        4.    AFTER GRANTING ALL INFERENCES IN GRIFFITH'S FAVOR, SHE REMAINS UNABLE TO SUBSTANTIATE A RACIAL DISCRIMINATION CLAIM

As Defendants explain above, even if the Court viewed the five proffered instances of alleged discrimination as amounting to adverse employment actions, no genuine issue of material fact remains to be tried as Griffith has offered insufficient "evidence to permit a finding that there was differential treatment in [any of the articulated] employment action[s] and that the adverse employment decision[s] w[ere] caused at least in part by a forbidden type of bias." *Burton*, 426 F.3d at 20 (*referencing Desert Palace*, 539 U.S. at 101). Because Griffith has failed to "present sufficient evidence for a reasonable jury to conclude, by preponderance of the evidence, that race … was a motivating factor for any employment practice," her discrimination claim under Title VII must be dismissed as a matter of law. *Desert Palace*, 539 U.S. at 101.

### B. PLAINTIFF'S CLAIM OF A HOSTILE WORK ENVIRONMENT FAILS AS A MATTER OF LAW

Griffith suggests that she has established a *prima facie* case under a hostile work environment analysis because "Plaintiff was proficient [at performing her job], which [is] material to establishing a *prima facie* case." (Second Opposition, p. 15). This argument, however, is antithetical to Griffith's claim and misstates well-settled law. The Supreme Court has long held that a hostile work environment occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)); *Caban v. Carribbean Transp. Serv.*, 2005 WL 3560689 *4 (D.P.R. 2005).

Assuming that Griffith believed all of her cited testimony in the Second Opposition was evidence of a hostile work environment, she has failed to demonstrate with citations to relevant case law that the actions as a whole were objectively and subjectively offensive such that a reasonable person would find them hostile or abusive or that the actions amounted to more than "simple teasing, offhand comments, and isolated incidents." *Farragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see Andujar v. Nortel Networks, Inc.*, 400 F.Supp.2d 306, 329 (D.Mass. 2005) (citing *Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 82 (1st Cir. 2001); *compare Paquin v. MBNA Marketing Sys.,*