*Inc.*, 233 F. Supp. 58, 64 (D.Me. 2002) (five instances of inappropriate conduct fall well short of the frequency to amount to an abusive working environment) *with Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 19 (1st Cir. 2002) (holding hostile work environment where harassment was "more or less constant" from the plaintiff's first day of work in April 1995 until she left in November 1996) *and White v. New Hampshire Dep't of Corr.,* 221 F.3d 254, 260-61 (1st Cir. 2000) (finding hostile work environment where, *inter alia,* "disgusting comments" and conversations occurred "everyday"); *and Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir. 1990) (expressing doubt as to whether five sexual comments made over the course of a four to five week period constitutes harassment severe or pervasive enough to create a hostile work environment).  Accordingly, Griffith's hostile work environment claim fails as a matter of law. *See id*.

## IV.  PLAINTIFF FAILED TO MEET HER EVIDENTIARY BURDEN ON HER CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

As she did with her race discrimination claims, Griffith also contends that the mixed motive analysis applies to her claim of disability discrimination. (Second Opposition, p. 9).  Defendants assert that the proper analytical tool is the *McDonnell Douglas* burden shifting analysis as set forth in its Motion.  Regardless of the analysis applied, Griffith's claim for disability discrimination under the ADA fails because she is incapable of substantiating her evidentiary burdens.

### A.  PLAINTIFF DOES NOT HAVE A QUALIFYING DISABILITY

Before she can apply the mixed motive analysis, Griffith must demonstrate that she was a disabled person within the meaning of the ADA who was capable of performing the essential functions of her job.  To qualify as disabled, Plaintiff must demonstrate that her heart disease was a disability under the ADA such that it limited one or more of her major life activities. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002).

During her deposition, Griffith testified that the only limitations she experienced as a result of her heart disease were an inability to undergo extreme changes in temperature, run distances, shovel snow, lift heavy items, or eat foods high in cholesterol. (Facts, ¶ 4). In her Second Opposition, however, Griffith attempts to dispute her deposition testimony by relying on her Verified Complaint to offer additional changes in her lifestyle in support of her belief that she qualified as disabled under the ADA. (Second Opposition, p. 17). As discussed in section II. A. *supra*, Griffith cannot create a disputed issue of fact to avoid summary judgment by contradicting her sworn deposition testimony. *See Kaltman-Glasel*, 228 F.Supp.2d at 108.

Though never mentioned during her deposition, in support of Griffith's contention that her heart disease substantially limited her major life activities, Griffith argues that her physicians required her to "minimize stress." (Second Opposition, p. 17). Griffith fails, however, to take the next essential steps – arguing that the requirement to minimize stress substantially limited one or more life activities. *See Mulloy v. Acushnet Co.*, 2005 WL 1528208 * 4 (D.Mass. 2005) ("to be disabled for purposes of the ADA means having or being 'regarded as' having a mental or physical impairment that 'substantially limits one or more major life activities.'") (*quoting Guzman-Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 9 (1st Cir. 2005) (*quoting* 42 U.S.C. § 12102(2)(A))). Instead, Griffith argues that Defendants "acknowledged her disability by granting two of [her] three requests for accommodation," suggesting that OneBeacon's decision to accommodate Griffith's request was a *per se* admission of her status as a disabled person in future litigation. (Second Opposition, p. 17). Griffith's reliance is misguided and her proposition, a fundamental misstatement of the law. *See Chapagner v. ServiStar Corp.*, 138 F.3d 7, 14 (1st Cir. 1998) (*citing Benoit v. Tech. Manuf. Corp.*, 331 F.3d 166, 176 (1st Cir. 2003) (voluntary decision by employer to accommodate employee does not establish employee was disabled or that accommodation was required)).

    **B.**    **PLAINTIFF COULD NOT PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB**

17

Even if the Court were to presume she was a qualifying individual within the meaning of the ADA, Griffith is incapable of demonstrating that she could perform the essential functions of her job, a compulsory component of her disability claim. *See Elkouri v. Trustees of Boston Univ.*, 169 F.Supp.2d 1, 2 (D.Mass. 2001) (Harrington, S.J.).

Griffith attempts to gloss over the realities of her performance reviews by suggesting that "Defendants continued to find her proficient." (Second Opposition, p. 18). While this terse reading of the facts is technically accurate, it ignores the fact that Griffith's same performance reviews expressly addressed her attendance problems. (Facts, ¶¶ 16, 28). Both the 1998 and 1999 reviews that ranked Griffith's performance as "proficient" included specific statements that Griffith's attendance issues were hampering her performance and her ability to advance at work. (*Id*.).

As she did in her race discrimination argument, Griffith argues that Holmes testified that she did not keep track of Griffith's attendance records. (Second Opposition, ¶ 18). As discussed above, Griffith mischaracterizes Holmes' testimony with the false hope the mischaracterization will help her overcome summary judgment. While Holmes did testify to OneBeacon's flexible hours, Holmes further testified that she began to track both Griffith's and Russo's attendance when both women continued to violate OneBeacon's attendance policies after they were warned. (Exhibit A, pp. 94-97). Griffith's assertion that "Holmes admitted that she did not keep track of tardiness until after the first warning" is an unequivocal misstatement of the record. (Second Opposition, p. 18).

### C. PLAINTIFF CANNOT SUBSTANTIATE HER BURDEN OF PROOF UNDER THE MIXED MOTIVE ANALYSIS

Assuming Griffith could demonstrate that she suffered from a disability and was nevertheless capable of performing the essential functions of her job, under a mixed motive analysis, Griffith must demonstrate that the alleged acts of discrimination amount to an adverse employment acts *and* that

18

Defendants possessed some discriminatory motive in causing the adverse employment action[4]. *See Rossiter*, 05 WL 1288063 at 241-42 (internal citations omitted).

### 1.  THE 1999 PERFORMANCE REVIEW

Griffith presumes that the 1999 performance review, on its face, constitutes an adverse employment act. In so doing Griffith fails to acknowledge and distinguish the *Keeler* Court's determination that a performance review alone is insufficient evidence of an adverse employment action. 238 F.3d at 10.

Assuming the 1999 review could constitute an adverse employment action, in an effort to link the review to Sisto's alleged discriminatory motive, Griffith argues that Sisto and Holmes were aware of her disability when they issued the second and final written attendance warning. (Second Opposition, p. 18). This knowledge is inconsequential to Plaintiff's burden because knowledge, *per se*, of a person's protected status does not imply intent to discriminate. Griffith offers no additional support for her belief that Holmes and Sisto acted with discriminatory motive in allowing Scanlon's comments to remain a part of Griffith's review after Scanlon's departure from OneBeacon. Instead, Griffith simply asserts that Holmes and Sisto had enough time from the point at which she first began to report to them until the date of her 1999 performance review to develop discriminatory intent.

### 2.  THE TERMINATION

Likewise, Griffith contends that her termination was a result of Defendants' discriminatory motive due to her alleged disability. Despite her contention, the Second Opposition is devoid of any evidence that Defendants' made the decision to terminate Griffith for any reason other than her inability to abide by the final written warning. Griffith's conjecture is simply that, conjecture. For even if Plaintiff complained that the written warnings were issued in error, informed Holmes and Sisto of her alleged disability prior to their issuance of the written warnings, and indicated, through

---

[4] Defendants address only the alleged acts of discrimination raised in Plaintiff's Second Opposition. Defendants respectfully refer the Court to the race discrimination section, Section III. A., *supra*, for a mote detailed explanation of the mixed motive analysis.

19

counsel, that Defendants may be violating the ADA, Griffith has offered no legal precedent to suggest the above described situations are sufficient to support an inference of discriminatory intent. As a result, she is unable to meet her evidentiary burden.

### D. DEFENDANTS WOULD HAVE TAKEN THE SAME ACTIONS REGARDLESS OF PLAINTIFF'S DISABILITY

There can be no question that Defendants would have taken the same actions toward Griffith regardless of her disability. As discussed more fully above, Defendants provided Griffith with the opportunity to improve her performance before placing her on written warning. This was the same opportunity Holmes offered Russo. That Russo corrected her behavior while Griffith did not is not evidence of discriminatory motive. Rather it suggests that Griffith simply failed to adhere to the requirements of the written warning. As such, Griffith's claim fails as a matter of law.

## V. PLAINTIFF FAILED TO MEET HER EVIDENTIARY BURDEN ON HER CLAIMS OF RETALIATION IN VIOLATION OF TITLE VII AND THE ADA

As she did for her disparate treatment claims, Griffith's Second Opposition contends that the proper analysis for her claims of retaliations on the basis of her race and alleged disability is the mixed motive analysis, not the *McDonnell Douglas* pretext analysis offered in Defendant's Motion. (Second Opposition, pp. 23 "Plaintiff re-incorporates her argument on this issue [failure to prove retaliation] as presented on page nine, the second paragraph" that "Plaintiff has triggered the Mixed Motive Approach [sic].") In 1996, the First Circuit definitively ruled that the *Price Waterhouse* rule, in which an employer is not liable under a mixed motive analysis if it can prove that, even if it had not taken the discriminatory factor into account, it would have come to the same decision regarding a particular person, applies to mixed motive retaliation claims. *See Tanca v. Nordberg*, 98 F.3d 680, 681, 684-85 (1st Cir. 1996) (*citing Price* Waterhouse, 490 U.S. at 242); *Kirk v. The Hitchcock Clinic*, 2000 WL 1513715 * 6 (D.N.H. 2000). As such, under the mixed motive analysis upon which

Plaintiff relies, Defendants are not liable if they show that the same decision would have been made in the absence of the unlawful motive. *See id*.

By arguing that a mixed motive approach applies to her retaliation claims, Griffith concedes that there were legitimate reasons for the actions taken by Defendants. *See Rossiter*, 2005 WL 1288063 at * 3 (*citing Price Waterhouse*, 490 U.S. at 241-42) (mixed-motive analysis appropriate where evidence exists that both legitimate and illegitimate factors played motivating roles in adverse employment action). Even if Defendants decision to take each adverse employment action was influenced by Griffith's race and disability, "the fact that [Defendants] had another adequate and non-discriminatory reason [for the employment actions] relieves them of Title VII [and ADA] liability under a retaliation claim." Griffith's retaliation claims fail as a matter of law. *Tanca*, 98 F.3d at 685 (*Price Waterhouse* rule continues to apply to mixed motive retaliation claims)

## CONCLUSION

Given that Plaintiff has 1) attempts to create a question of fact by contradicting her own deposition testimony; 2) has failed to meet her burden of proof on her race and disability discrimination claims under both a pretext and mixed motive analysis; 3) has failed to cite any legal precedent to support her claim of a hostile work environment; and 4) has failed to articulate a legally cognizable retaliation claim under the mixed motive analysis, Defendant respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and deny the requests set forth in Plaintiff's Opposition papers.

**REQUEST FOR ORAL ARGUMENT**

Since the Hearing on the Motion for Summary Judgment, additional papers have been filed and the issues are now fully briefed. In light of this fact, Defendants respectfully request oral argument on the instant motion.

Respectfully submitted,

ONEBEACON INSURANCE CO. and
ONEBEACON AMERICA INSURANCE CO.,

By their attorneys

Dated: January 20, 2006

/s/ Leah M. Moore_____
Keith B. Muntyan (BBO # 361380)
Leah M. Moore (BBO # 658217)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, MA 02109
617-523-6666 (phone)

CERTIFICATE OF SERVICE

I, Leah M. Moore, hereby certify that on this 20th day of January 2006, I caused a true and correct copy of the foregoing to be served via first class mail upon Kathleen J. Hill, Esq., Attorney for Plaintiff, Law Office of Kathleen J. Hill, 60 State Street, Suite 700, Boston, Massachusetts 02109, being the address designated by said attorney for service of all pleadings.

/s/ Leah M. Moore_____
Leah M. Moore