**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2007 SEP 11 ⊃ 3: 43

U.S. DISTRICT COURT
DISTRICT OF M....

|  |  |
|---|---|
| BERNADINE T. GRIFFITH, PRO SE | ) ) ) |
| Plaintiff, | ) CIVIL ACTION No.: 03-CV-12573-EFH ) |
| v. | ) ) |
| ONEBEACON INSURANCE COMPANY, ONEBEACON AMERICA INSURANCE COMPANY, MICHAEL A. SISTO and KAREN ALLEN HOLMES, | ) **PLAINTIFF'S MOTION FOR DEFAULT** ) **JUDGMENT/ PLAINTIFF'S MOTION** ) **FOR RECONSIDERATION** ) ) |
| Defendants. | ) ) |

Plaintiff, Bernadine T. Griffith, hereby submits her Motion for Default Judgment/Motion for Reconsideration in the above captioned civil action against Defendants OneBeacon Insurance Company and OneBeacon America Insurance Company (together, "OneBeacon", the "Company" or "Defendants").

<u>**Basis for Motion**</u>

Defendants violated Plaintiff's privacy rights that are protected by various Federal laws when their July 2005 Motion for Summary Judgment contained specific documents[1] and categories of information that required special protection against unlimited public access.

In violation of Federal Rules of Civil Procedure – Rule 11(b)(3), Defendants presented to the Court assertions and denials that were not warranted based on the evidentiary exhibits filed with Defendants' Motion for Summary Judgment; Defendants' Motion for Summary

---

[1] Due to the subject matter and confidential data contained in some of the documents the Defendants submitted as exhibits with their Motion for Summary Judgment, Plaintiff has not attached the Defendants' exhibits that require special protection against unlimited public access. The Plaintiff will willingly submit the exhibits if the Court wishes to examine them.

Judgment/Defendants' Motion for Reconsideration; Defendants' Renewed Motion for Summary Judgment; and Defendants' Motion to Conduct Rule 35 Examination.

The Committee on Court Administration and Case Management, through its Subcommittee on Privacy and Public Access to Electronic Case Files, determined the language in Federal Rules of Civil Procedure – Rule 11 and the inherent power of the Court would deter counsel or litigants from employing the litigation tactic of intentionally including embarrassing or irrelevant information in their electronically filed documents.

## I.  Defendants Published Plaintiff's Personal Data Identifiers in Multiple Documents

1. Defendants' electronic filing of documents containing the following personal data identifiers exposed Plaintiff and her family to identity theft and violated Plaintiff's privacy rights under law: (a) Social Security number; (b) Date of Birth; (c)secondary personal data identifiers – i.e., Plaintiff's mailing and residential addresses; home telephone number; home ownership and length of occupancy; clinical identification number; identity of husband's employer; city, state of employer's address; husband's length of employment with current employer; name of husband's previous employer.

2. Civil Action No.: 03-CV-12573-EFH is not a Social Security case; therefore, the publication of Plaintiff's Social Security number and date of birth was not essential to this case and should have been protected before electronic filing.

   a. Defendants' counsel submitted five (5) pages in Summary Judgment exhibits with Plaintiff's name and Social Security number.

   b. Plaintiff's name and date of birth appeared on three (3) pages in Summary Judgment exhibits – one of which also displayed Plaintiff's Social Security number.

   c. Plaintiff's personal data identifiers, confidential medical and behavioral medicine records were available four (4) days on the Public Access to Court Electronic Records (PACER).

3. Protecting and enforcing privacy rights of litigants is taken very seriously as evidenced by the following privacy policies, rules, and Federal laws. Defendants' Motion for Summary Judgment violated them all.

   a. The Judicial Conference Policy on Privacy and Public access to electronic case files (JCUS-SEP/OCT 01, pp.48-50) with respect to redaction and sealing requirements of personal data identifiers.

   b. E-Government Act of 2002

   c. United States District Court – District of Massachusetts Notice of Electronic Availability of Case File Information – AMENDED TO COMPLY WITH THE AUGUST 2, 2004 AMENDMENTS TO THE E-GOVERNMENT ACT OF 2002

      i   In compliance with Local Rule (LR) 5.3, you should not include sensitive information in any document filed with the court unless such inclusion is necessary and relevant to the case.

      ii  In compliance with E-Government Act of 2002 and August 2, 2004 Amendments, a party wishing to file a document containing the personal data identifiers may:

         (a) file an unredacted document under seal pursuant to LR 7.2.

         (b) file a reference list under seal pursuant to LR 7.2

## II. Defendants Published Plaintiff's Confidential Medical Records

The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Standards for Privacy of Individually Identifiable Health Information (the Privacy Rule) The Privacy Rule (45 CFR Part 160 and Subparts A and E of Part 164) provides the first comprehensive Federal protection for the privacy of health information. Defendants' Motion for Summary Judgment violated Plaintiff's HIPAA rights with the publication of her medical records.

1. Defendants' electronic filing of documents with Plaintiff's protected health information (e.g., Social Security number, date of birth, clinical identification number, postal address,

-3-

telephone number), exposed Plaintiff to medical insurance theft and violated Plaintiff's privacy rights under HIPAA (Privacy Rule).

2. Written notification was given to counsel representing the Defendants and Lahey Clinic that Plaintiff expressly waived no right and invoked her privacy rights under HIPAA.

   a. Plaintiff's confidential records had restrictive use. Notification was given to counsel that these records were not to be published, released, used as exhibits, or attached to any filing.

3. In Defendants' Motion to Conduct Rule 35 Examination, Defendants claimed Plaintiff produced an incomplete copy of her medical records from 1994 through the present.

   a. The Defendants identified a single page as "an incomplete copy of Plaintiff, Bernadine T. Griffith's medical record". The single page exhibit was attached to Defendants' May 2, 2005 Affidavit of Leah M. Moore in Defendants' Motion to Conduct Rule 35 Examination on Plaintiff. (Exhibit - Affidavit of Leah M. Moore)

      i   The Defendants' Affidavit of Leah M. Moore alleged the single page exhibit was in the medical records Plaintiff produced – i.e., "Included in this production was a document which appears to be notes made by Plaintiff's treating clinician after seeing Griffith at the Lahey Clinic during the relevant time period."

      ii  The Defendants' single page handwritten exhibit was completely missing patient identification and a date. A scribble, assumed to be a clinician's signature, was not legible but "Depression", "Psychotic F.", and "Bipolar Mixed" was decipherable.

      iii The Defendants' Motion to Conduct Rule 35 Examination – mental, with its declaration that the single page handwritten exhibit "appears to be notes made by Plaintiff's clinician", was granted. Defendants did not explore the power of the Court's subpoena to compel Plaintiff's medical provider to produce a certified

      copy of Plaintiff's medical records before vilifying the Plaintiff with speculative

      psychiatric disorders.

4. Defendants published as exhibits, ten (10) medical documents relating to Plaintiff.

5. The Defendants layperson's summarization of the confidential doctor/patient interactions

    between Plaintiff and her doctors, within the text of the Motion for Summary Judgment,

    was distorted and did not reveal any unethical behavior.

6. The Defendants' representation of this quote from Plaintiff clinician's confidential

    progress note is inaccurate and distorted –

    a. Defendants' 17th Statement of Undisputed Material Facts states – "On January 20,

       1999, [Dr.] Garrison noted that 'it is still difficult for me to tell how much of the

       patient's perception is due to mild paranoia associated with her depression, and how

       much is realty'."

    b. The direct quote from Plaintiff clinician's confidential progress note is – "It is still

       difficult for me to tell how much of the patient's perception is due to mild paranoia

       associated with her depression, and how much is <u>realty-based in a very difficult work</u>

       <u>situation."</u>

7. In Defendants' 36th Statement of Undisputed Material Facts, Defendants: (1) displayed

    excerpts of the Plaintiff clinician's confidential diagnosis for her Family Medical Leave

    Act – leave of absence (FMLA); and (2) wrote: "On Griffith's Request for Leave of

    Absence form, she indicated only that she had a 'serious health condition'."

    a. Plaintiff's "serious health condition" entry on the leave of absence form does not

       justify Defendants publishing potentially distressing and embarrassing information

       that Plaintiff's own clinician, with an exercise of professional judgment, did not

       divulge to her. The Plaintiff asserts:

i    The Defendants told Plaintiff to complete a form for FMLA leave <u>after</u> Plaintiff
returned from her June 2000 sick leave with a doctor's note; the Defendants then
asked Plaintiff to authorize her clinician to submit his detailed medical diagnosis.
These documents were dated and Plaintiff had a reasonable expectation to believe
the acquiescence of privacy laws would protect her date of birth, Social Security
number, and the confidential medical information contained in the documents
from being disclosed. Nonetheless, Plaintiff's name accompanied with her
detailed medical diagnosis, date of birth, and Social Security number were
published on the Internet.

ii    The Defendants did not indicate the relevance or why it was essential to publicize
Plaintiff's name with her Social Security number, date of birth, and confidential
medical diagnosis for Plaintiff's approved FMLA sick leave.

8.    Defendants' $33^{rd} - 38^{th}$ Statements of Undisputed Material Facts exposed details in
Plaintiff's medical records that her clinician determined, with an exercise of professional
judgment, was not essential to disclose to her. For example:

a.    The Defendants presented the following unsubstantiated quote in Defendants' 34th
Statement of Undisputed Material Fact: "Griffith told Dr. Seek that she believed 'her
[Griffith's] attorney was feeding information to the company [OneBeacon]' and that
the 'police accused her of causing her own flat tire on 128'."

i    The defendants did not indicate why this unsubstantiated statement was essential
or relevant as an undisputed material fact. (Note: Plaintiff believes
miscommunication during a brief doctor/patient session may be responsible for
the statement – if it is proven to be true. AAA Roadside Service changed
Plaintiff's tires and the Plaintiff's only encounter with police resulted in her
getting a warning for speeding).

-6-

9. The Defendants' depiction of Plaintiff's patient contact with the qualified professionals at her health care facility trivialized the Plaintiff's and clinicians' serious health concern – which is Plaintiff's heart condition. The defendants presented to the Court: (a) deceptive and misleading information which confuses the issues; (b) unsubstantiated, irrelevant, and nonessential information without an explanation of the probative value; and (c) an inaccurate and distorted portrayal of Plaintiff clinician's confidential progress quote.

## III. Defendants violated Federal Rules of Civil Procedure – Rule 11(b)(3)

Plaintiff asserts the Defendants attached, to their motions, exhibits that do not validate the Defendants' claims. All of the Defendants' exhibits referenced in this section were attached to either Defendants' Motion for Summary Judgment; or Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration; or Defendants' Renewed Motion for Summary Judgment in the above captioned civil action.

A brief description of the Company's employees referenced in this section follows:

- Michael [Mike] Sisto was a Company administrator based in Philadelphia, PA.
- Monica Scanlon reported directly to Michael Sisto.
- Karen Holmes reported to Michael Sisto and Monica Scanlon. Karen Holmes was also the Plaintiff's immediate supervisor.
- "Freeman", "Ed", "Ed Freeman" was Plaintiff's previous supervisor.
- "Bernadine", "Griffith", "Ms. Griffith" refers to the Plaintiff.

1. Defendants' 9th Statement of Undisputed Material Facts states –
    a. "During a conversation with a co-worker about a computer programming project to which no members of the group had been officially assigned, but on which several of them had reluctantly worked, Freeman described the project as a 'tar baby'."
    b. "The conversation occurred in general open office space, such that anyone who was in the vicinity could have overheard it because Freeman was standing outside a

-7-

cubicle and was talking to his co-worker, Bob Petrarca ('Petrarca') several cubicles

away. (Griffith Deposition, pp. 111-12; Griffith office drawing)."

The Plaintiff asserts – Defendants' Exhibit Griffith Deposition[2] pp. 111-112 contradicts

Defendants summarization. Griffith Deposition p.111 starts with Defendants' counsel

asking Plaintiff to draw where Plaintiff, Ed Freeman, and Bob Petrarca were at the time

the comment "tar baby" was made. Defendants' Exhibit "K", Griffith office drawing,

illustrates Bob Petrarca's workspace was directly behind Plaintiff and they shared a

cubicle panel.

c. Defendants' Exhibit Griffith Deposition, page 111 describes in detail the layout of her

drawing: [Plaintiff] "And then I was reading a manual right here, and Freeman was

standing here, directly behind me, and the cubes are open. This is Bob's terminal,

monitor. This is my monitor. They were back to back."

d. Defendants' Exhibit Griffith Deposition, page 112 continues to describe the layout of

cubicles, and the locations of Plaintiff and Freeman. "So he [Freeman] was standing

here, and I [Plaintiff] was sitting here, and he boomed, 'Do you know what a tar baby

is'." Question [Atty. Moore] "Who was he talking to?"

Answer [Plaintiff] "I assumed, and I was shocked, and because he was standing right

behind me, I swerved in my chair and I looked directly at him, and we held eye

contact and the next thing Bob said, 'What?' and Ed said again, Do you know – he

turned his head. He didn't move. He said, 'Do you know what a tar baby is'?"

e. Defendants' Exhibit Griffith Deposition, page 114 states:

Question [Atty. Moore] "So is it your testimony, then, that Ed sort of walked out of

nowhere and said, 'Do you know what a tar baby is'?"

---

[2] Due to the confidential data contained in this document, Plaintiff has not attached Defendants' Exhibit, Griffith
Deposition. The Plaintiff will willingly submit this exhibit if the Court wishes to examine it.

Answer [Plaintiff] "That's my testimony. I know he could have walked from this direction or he could walk from that direction. All I know is when I swerved around and heard his booming voice saying, 'Do you know what a tar baby is,' question mark, the way his voice was inflecting, I turned around in my chair, and I looked at him and gave him eye contact, and he gave me eye contact."

2. The Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration – The Termination, p.14 quote: "Defendants provided Griffith with ample opportunity to improve her attendance. They referenced it in her 1998 and 1999 performance reviews." The Plaintiff asserts Defendants' evidence show:

   a. Defendants' Exhibit "R", Def 0128, December 17, 1998 CU Exempt Performance Appraisal, identified Plaintiff's absences as minor and legitimate health related.

   b. The Company's Associate Relations - Associate Handbook p.35 of cataloged absences, does not mandate 'improvement of attendance' for legitimate health related absences from associates with a serious health condition and an authentic accommodation agreement (Associate Handbook p.35 is attached to Defendants' Associate Disciplinary Actions: Exhibit "FF", Def 0118 and Exhibit "RR", Def 0116).

3. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration – The Termination, p.14 states "When Holmes' report of Griffith's attendance demonstrated that Griffith was violating OneBeacon's attendance policies, Griffith was placed on formal written warning that required her to adhere to specific attendance policies and procedures for a period of ninety days." The Plaintiff asserts –

   a. Defendants' evidence show "Holmes' report of Griffith's attendance" was not used to justify placing Plaintiff on disciplinary written warning for a period of 90 days.

-9-

b. Defendants' Bates No. Def 0093 and Def 0094 in Defendants' Exhibit "EE", Karen Holmes' 2000 Griffith Performance Job Record <u>was not</u> listed as evidence of Plaintiff's tardiness or excessive absences on <u>any</u> of the Associate Disciplinary Action Notice(s) that were given to the Plaintiff.

c. Defendants' Bates No. Def 0082 in Defendants' Exhibit "CC" – Monica Scanlon's January 5, 2000 attachment to the 1999 Performance Appraisal of Bernadine Griffith was listed as "Coaching, Date(s)" on Plaintiff's May 23, 2000 Associate Disciplinary. Action Notice even though the attachment referenced Plaintiff's approved health related absences from the prior year.

  i   Defendants' inclusion of Exhibit "FF", Def 0118 – Company Sick Policy p.35, as an attachment to Plaintiff's May 23, 2000 Associate Disciplinary Action Notice, and the reference to criticism of legitimate health related absences listed as "Coaching, Date(s)" on the disciplinary notice, emphasizes Plaintiff's confusing predicament when her approved FMLA leave for a serious health condition occurred during the same time period as Plaintiff's 90-day disciplinary punishment for excessive [legitimate health] absences and [unsubstantiated] tardiness from a prior year.

4. Defendants' 23rd Statement of Undisputed Material Facts states – "Scanlon officially retired from OneBeacon in December 1999, but was kept on as a consultant until the end of January 2000 to assist with the transition. (Scanlon Deposition, pp. 15-16)". The Plaintiff asserts the transcript in Defendants' Exhibit "B", August 30, 2004 Monica Scanlon Deposition, pp. 15-16 conveyed: (1) Monica Scanlon did not tell the Company her personal reasons for retiring; and (2) she felt the hours were long and stressful.

a. From Defendants' Exhibit "B", Monica Scanlon Deposition, p.89 – Question [Atty. Hill] "When did you plan to leave your employer?"

Answer [Scanlon] "My last day was December 31st, 1999."

5.  Defendants' 24th Statement of Undisputed Material Facts quote – "Because Griffith
    reported to Scanlon for the period of time covered in her 1999 review, Scanlon assisted
    Holmes in preparing Griffith's review and drafted an attached memorandum outlining
    specific areas for Griffith's improvement." The Plaintiff asserts Defendants' evidence
    does not support Scanlon assisted in the preparation of Plaintiff's review for the
    justification Defendants presented.

    a.  Defendants' evidence conveys Plaintiff did not report to Monica Scanlon for the time
        period covered in her 1999 performance appraisal. In Defendants' Exhibit "B",
        August 30, 2004 Monica Scanlon Deposition, p.100, Scanlon explains that as a
        manager "I [Scanlon] don't complete the form [performance appraisal]. I review the
        form". When asked who completed the form [performance appraisal], Scanlon's
        response was: "This form will be completed by her direct supervisor which would
        have been Karen Holmes […]".

    b.  Defendants' Exhibit "C" – Holmes Deposition, pp.57-58 corroborates that she
        [Holmes] was the supervisor responsible for providing the performance appraisal of
        Ms. Griffith. When asked if Ms. Griffith was a proficient employee for this time
        period [1999], Holmes answered "yes".

6.  The 24th Statement of Undisputed Material Facts also states Monica Scanlon "drafted an
    attached memorandum outlining specific areas for Griffith's improvement". The Plaintiff
    asserts the Defendants' representation of Scanlon's reason for drafting a memorandum of
    Plaintiff's areas for improvement is misleading. Defendants' evidence does not support
    Defendants depiction that it was the standard pattern of management for the Defendants
    to allow a retired project manager to override the official sick policy for a proficient

employee with a known heart disability and an authentic Company accommodation agreement.

a.  The "specific areas" for Griffith's improvement identified in Defendants' Exhibit "CC", Def 0082, January 5, 2000 Monica Scanlon Memorandum, were controlled and administered by the Defendants' appropriate Human Resources personnel; corroborating evidence is documented in the Company's Associate Relations - Associate Handbooks.

b.  The Defendants violated provisions of its own personnel policy when the Defendants permitted sick policy judgments, in Monica Scanlon's January 5, 2000 Memorandum, to be relevant only for the Plaintiff.

c.  The Defendants alleged, in their 23rd Statement of Undisputed Material Facts, that Monica Scanlon worked as a consultant for the Defendants until the end of January 2000.  The Plaintiff asserts that while working as Defendants' consultant, Monica Scanlon, a recent retiree, instructed Plaintiff's supervisor to attach Scanlon's memorandum that criticized Plaintiff's legitimate health related absences, to the 1999 Performance Appraisal of Bernadine T. Griffith.

d.  Although Monica Scanlon's January 5, 2000 memorandum was written without the knowledge base of a cardiologist, the Defendants permitted: (a) Plaintiff to be governed by Scanlon's critical assessment of Plaintiff's approved sick absences; and (b) Scanlon to direct Karen Holmes and Plaintiff to devise a plan for resolving excessive absenteeism.  Scanlon's directive to Plaintiff and Karen Holmes infringed on Plaintiff's medical privacy rights.

e.  The Defendants permitted Monica Scanlon, as a retiree/consultant, to introduce the term "excessive absenteeism" in Defendants' January 5, 2000 Memorandum;

-12-

however, neither Scanlon nor the Defendants defined the guideline of "excessive absenteeism" for legitimate health related absences.

    i   Because Plaintiff's heart condition could not sustain the long hours of production support without Plaintiff becoming ill, Plaintiff asked for reassignment to programming positions that she was qualified for. Plaintiff also asked Scanlon to give Plaintiff back the hours in her accommodation agreement. Scanlon said "no" to the hours and "not now" for the programming position.

    f.   The Defendants' evidence establishes that Monica Scanlon, as a retiree/consultant, was permitted to continue her efforts to keep Plaintiff in a position that required long hours and the exhausting physical activity of production support when the Defendants (1) attached the January 5, 2000 Monica Scanlon Memorandum to the 1999 Performance Appraisal of Plaintiff; and (2) placed Plaintiff on a 90-day disciplinary punishment with references to Scanlon's sick policy judgments.

7. Defendants' Exhibit "FF" – May 23, 2000 Associate Disciplinary Action Notice listed excessive absences and tardiness as reason(s) for warning. Plaintiff asserts Defendants presented two yearly attendance records with "zero (0) lateness".

    a.   Exhibit "BB", Def 0185, 1999 Griffith Attendance Records, and Exhibit "EE", Def 0177, 2000 Griffith Performance Job Record attendance records, show: zero (0) lateness, zero (0) absence without pay. Exhibit "EE", Def 0176, list 8.5 carryover vacation days from 1999 and Exhibit "BB", Def 0183, list 3.5 carryover vacation days from 1998.

8. Defendants' 18th Statement of Undisputed Material Facts states: "Holmes requested by email to the entire group that every group member participate in unpacking the crates. (August 26, 1999 email exchange). Nevertheless, Griffith believed that Holmes had singled her out to perform manual labor". The Plaintiff asserts Defendants' statement is

unsubstantiated and deceptive. Plaintiff was concerned about the negative effect that emptying stacks of heavy industrial crates filled with equipment and books would have on her health. Defendants' Exhibit "U", August 26, 1999 Karen Holmes email is addressed to two group members: "Dai, Aihua" and "Griffith, Bernadine T".

   a. Defendants' Exhibit "AA", October 20, 1999 Moner Letter[3], from Plaintiff' clinician informs the reader of Plaintiff's Coronary Artery Disease and asked for a lift limit accommodation.

   b. Defendants did not indicate why a demand for Plaintiff, a Programmer Analyst, to unpack crates was essential and/or relevant as an undisputed material fact.

9. In Defendants' 32nd Statement of Undisputed Material Facts, Defendants claim: (a) "As a result of her excessive absences and tardiness, Griffith was placed on a written warning on May 23, 2000 during a meeting with Holmes and Sisto"; and (b) "Griffith read and understood that should her performance fail to improve to an acceptable level, she would be subject to a final warning." The Plaintiff asserts:

   a. The Defendants' Exhibit "HH", Def 0112, Karen Holmes' May 23, 2000 Meeting Note conveys: (a) Plaintiff was not allowed to discuss her mitigating circumstances – i.e., Plaintiff was compliant with Company policy when Plaintiff worked overtime; and (b) The Plaintiff was not allowed to ask for clarification regarding the conflicting and perplexing instructions in the disciplinary action – i.e., "no absence from work", "no tardiness" versus "failure to improve to an acceptable level…".

10. Defendants' 39th Statement of Undisputed Material Facts quote – "When Griffith returned from her FMLA leave on June 26, 2000, despite being placed on the May 23, 2000 warning, she continued her pattern of tardiness and arrived late to work on June 27,

---

[3] Due to the confidential data contained in this document, Plaintiff has not attached Defendants' Exhibit "AA", October 20, 1999 Moner letter. The Plaintiff will willingly submit this exhibit if the Court wishes to examine it.

June 29, July 5, July 6, July 7, July 10, and July 11, blaming her tardiness on "tall ships" and "accidents" that caused traffic." (Griffith personal calendar) The Plaintiff asserts:

a. Griffith personal calendar identified as: Defendants' Exhibit OO, MCAD0155 and Griffith Exhibit No.15, does not list July 5, July 6, July 7, and July 10 as tardiness.

   i   The notation written in Defendants' Exhibit "OO", Griffith personal calendar documents Plaintiff was given an 'arrival grace period' of 15 minutes. The grace period nullifies the few extra minutes it took Plaintiff to navigate to her cubicle on June 27, June 29, and July 11.

11. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration, p.12 states – "Moreover, when Griffith's attendance became increasingly problematic, Holmes began to monitor Griffith's arrival and departure times." The Plaintiff asserts Defendants' Exhibit "A", Karen Holmes Deposition pp. 82-83, filed with Defendants Motion for Reconsideration and Defendants Renewed Motion for Summary Judgment, states: Karen Holmes only kept track of arrival times because she "didn't stay until 7:00 every night to monitor that [departure time]". Holmes testified she did not require employees to check in with her upon their arrival each morning.

   a. When Holmes was asked how she was able to be certain whether an individual had duly arrived each morning, Holmes replied: "Because I walked around the floor".

12. Defendants' 42nd Statement of Undisputed Material Facts quote – "As a result of the unplanned vacation day in violation of the May 23, 2000 warning, Griffith was placed on final warning on July 27, 2000." The Plaintiff asserts the Defendants' evidence conveys:

   a. Plaintiff was not placed on final warning. Plaintiff asserts the Defendants did not identify Plaintiff as the recipient and/or ask Plaintiff to write her name and signature on Defendants' Exhibit "RR" July 27, 2000 Associate Disciplinary Action Notice.

-15-

b. Plaintiff asserts: Defendants set the precedent by identifying the recipient of an Associate Disciplinary Action Notice when Plaintiff's name was written on Defendants' Exhibit "FF", May 23, 2000 Associate Disciplinary Action Notice.

c. Defendants' Exhibit "SS", July 27, 2000 Meeting Note of Human Resources representative Lisa Studholme, does not claim Plaintiff was asked to acknowledge with signature or initials her understanding – (1) of the terms; and (2) that she was the unspecified recipient of the July 27, 2000 Associate Disciplinary Action Notice.

d. Defendants' Exhibit "SS" July 27, 2000 Meeting Note shows – Lisa Studholme and Mike Sisto (1) controlled Plaintiff's conversation; and (2) ended the July 27, 2000 meeting before Plaintiff could question the significance of the disciplinary action's missing owner identifiers.

    i   Plaintiff concluded she was given an example of a final warning because: (1) the Defendants did not ask Plaintiff to sign a form that had missing owner identifiers; (2) the 8.5 vacation days Plaintiff carried over from 1999 did not indicate abusive usage of vacation days; therefore, Plaintiff surmised improvement to an acceptable level was not an issue.

13. Defendants' 43rd Statement of Undisputed Material Facts quote – "In spite of her July 27, 2000 warning, Griffith continued her pattern of tardiness." (Griffith Personal Calendar)"

a. Plaintiff asserts Defendants' statement is false. The Defendants' Exhibit "OO", Griffith Personal Calendar does not show a pattern of tardiness. Defendants' Griffith Personal Calendar unmistakably documents Plaintiff's consistent pattern of on time arrival to work before her start time of 10:00 a.m.

14. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration – The Termination, p.14 states "In accord with the clear language on the face of the final warning, Griffith's employment with OneBeacon was terminated." The Plaintiff asserts:

a. The "clear language on the face of the final warning" does not specify a recipient.

b. The uncertainty expressed by Mike Sisto and Karen Holmes regarding the disciplinary action's consequence for Plaintiff, contradicts Defendants' contention that the instructions/terms were clear.

    i   In Defendants' Exhibit "C", Deposition of Michael Sisto pp.118-119 filed with Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration, Mike Sisto testified – [Plaintiff had 'options'] and "avenues she could take if she had to be – not come to work, which was FMLA, and we had disability policies, short-term disability policies that she could use to cover those situations."

    ii   In Defendants' Exhibit "C", Deposition of Karen Holmes pp.191-192 filed with Defendants Motion for Summary Judgment, Karen Holmes testified – "... Mike Sisto and Tom Hibbert came to my cubicle and said that they were going to terminate Bernadine, and I was – I was shocked. I wasn't expecting it. And I didn't have a choice at that point. I was just told."

    iii   Defendants' Exhibit "C", Deposition of Karen Holmes p. 175 filed with Defendants Motion for Summary Judgment – Question: "With regards to the corrective action on this particular notice [Exhibit "FF" May 23, 2000 Associate Disciplinary Action]; was it permissible for Ms. Griffith to be out sick?" Answer [Holmes] "I don't think that's clear here."

15. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration, p.12 states – "[...] Defendants contend that Plaintiff was terminated for violating the terms of her second and final warning when she was absent from work for three days without giving prior notice. (Summary Judgment, p. 13)". Plaintiff contends:

a. Defendants' Exhibit "RR" July 27, 2000 Associate Disciplinary Action specified prior notice was required for <u>vacation</u> absences. Plaintiff's absences were sick.

b. Defendants' Exhibit "GG", Bates No. Def 0111, Michael A. Sisto's May 23, 2000 Meeting Note, validates Plaintiff was told – "Karen explained that FMLA is available to her [Plaintiff] to cover times when she needs to be out of work for medical reasons."

c. Defendants' Exhibit "EE" 2000 Griffith Performance Job Record, Bates No. Def 0094 supports Plaintiff's claim that the [unofficial] July 27, 2000 Associate Disciplinary Action was not violated. Plaintiff notified her supervisor at 7:24am on 9/11/2000; 7:26am on 9/12/2000; and 7:27am on 9/13/2000 with messages she would be out sick. Plaintiff was paid for 9/11 - 13/2000 sick absences without incident.

16. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration, p.16, states "Plaintiff Does Not Have a Qualifying Disability". Plaintiff asserts the following Defendants' exhibits convey Plaintiff has a qualifying disability according to the definition of the ADA.

a. Defendants' Exhibit "AA" October 20, 1999 Dr. Moner letter asks that Plaintiff not pack or unpack boxes or crates; lift, pull or push anything greater than 10 pounds.

b. Defendants' Exhibit "O", June 9, 1997 Dr. Tramposch letter[4] addressed Plaintiff's chest pain complaint and the tests conducted. Dr. Tramposch – (1) instructed Plaintiff to continue taking medicine and; (2) would support Plaintiff working at home a few days per week in hopes to control her chest pain, blood pressure, and limit stress.

c. Defendants' Exhibit "J", Bates No. Def 0138 – October 25, 1996 Memorandum outlined the Defendants' declaration to support Plaintiff clinician's request for limited

---

[4] Due to the confidential data contained in this document, Plaintiff has not attached Defendants; Exhibit "O", June 9, 1997 Dr. Tramposch letter. The Plaintiff will willingly submit this exhibit if the Court wishes to examine it.

overtime and no weekend assignments. (The Defendants' written demand for proof of Plaintiff's heart disability was satisfied before the accommodation was issued).

d. Plaintiff produced her Massachusetts Registry of Motor Vehicles Handicapped Parking Placard for a disabled resident with "Class III cardiac condition according to the standards set by the American Heart Association" to the Defendants.

e. Defendants' Exhibit "CC", Bates No. 0082 quotes Monica Scanlon, "You are a competent VB programmer who has very good debugging skills and has provided solid production support for our imaging applications."

f. Defendants' Exhibit "CC", 1999 Performance Appraisal of Bernadine Griffith, Bates No. 0122 quotes Karen Holmes: "I have attached the items from the Job Documentation for the position of Programmer Analyst II, which is your current position. I believe that you meet the qualifications of that position."

g. Defendants' Exhibit "CC", 1999 Performance Appraisal of Bernadine Griffith, Bates No. 0125, 0126 – has "Proficient" Rating.

h. Defendants' Exhibit "R", 1998 CU Exempt Performance Appraisal of Bernadine Griffith, Bates No. 0127, 0128 – has "Proficient" Rating.

## IV. Defendants' Claim Plaintiff and White Co-Worker Treated the Same

1. Defendants' Motion for Summary Judgment/Defendants' Motion for Reconsideration, p.14, quotes:

   a. "At the same time Holmes began tracking Griffith's attendance, Holmes also began tracking the attendance of Griffith's white female co-worker, Mary Ann Russo's."

   b. "[...] Griffith was placed on a formal written warning that required her to adhere to specific attendance policies and procedures for a period of ninety days. Holmes took the same steps for Russo."

   c. "The parallel experiences of Russo and Griffith demonstrate that Defendants would
       have taken the same action regardless of the race of the employee involved."

The Plaintiff asserts – Defendants' Def 0120 of Exhibit "FF", May 23, 2000 Associate

Disciplinary Action Notice and the transcript testimony in Karen Holmes' November 18,

2004 Deposition pp.101-104 verifies Russo and Griffith <u>did not have</u> parallel

experiences. The Plaintiff states:

   d. Karen Holmes testified she typed a short note on memo paper regarding Mary Ann
       Russo's tardiness, had Russo sign it, and filed it in Russo's personnel file. Holmes
       also testified Mary Ann Russo <u>was not</u> put on formal disciplinary action.

   e. Karen Holmes answered "Not at that time. I don't believe so" to the question: "Did
       you also draft a memorandum like you did for Mary Ann Russo and get it to
       Bernadine Griffith to sign and review?" Holmes could not recall why there was no
       memo given to Plaintiff with respect to her absenteeism.

   f. In Defendants' Exhibit "FF", May 23, 2000 Associate Disciplinary Action Notice –

      i   In response to the question printed on the disciplinary action form – "Have prior
          discussions been held with associate concerning the performance identified in this
          notice?" Holmes checked "Coaching Date(s):" and wrote – summer 1999(prior
          manager), 1/5/00 addendum to 1999 PMP (i.e., Performance Appraisal of
          Plaintiff).

   g. Plaintiff asserts – Defendants' Exhibit "FF" confirms Karen Holmes did not take the
       same steps with Griffith that she did with Russo. (1) Holmes did not certify she met
       with Griffith regarding her attendance before Griffith was placed on formal written
       warning. (2) Holmes wrote Griffith received coaching from her prior manager the
       previous year and (3) written notification was given to Griffith in the prior manager's
       1/5/00 addendum to Griffith's 1999 Performance Appraisal.

    i    The written information, in Defendants' Exhibit "FF" May 23, 2000 Associate
Disciplinary Action Notice, validates Plaintiff's assertion that her 90-day
disciplinary punishment was initiated by attendance grievances from Plaintiff's
retired prior manager. Mary Ann Russo's direct supervisor [Karen Holmes]
presented current attendance grievances to her.

## V. **Conclusion**

Defendants filed pleadings for Summary Judgment with evidence that supports Plaintiff's
claims she endured disability discrimination and racial discrimination while employed by the
Defendants. The Defendants published testimony from Plaintiff's managers that admitted their
uncertainty regarding the status of Plaintiff's sick benefits and testimony from Plaintiff's direct
supervisor that she was shocked when told of Plaintiff's imminent termination. The defendants
did not provide reasonable job-related grounds for Plaintiff's dismissal. The Defendants'
assertions and denials of the Plaintiff's claims are not supported by the evidence the Defendants
presented; e.g., (a) multiple documents that rated Plaintiff's job performance as proficient; (b)
1999 and 2000 attendance records with zero (0) lateness; (c) Plaintiff's confidential letter to her
doctor that reported Monica Scanlon's suggestion that Plaintiff stop taking the prescribed
medicine that caused drowsiness after Plaintiff's flex time for her open-ended workdays was
rescinded; (d) a performance appraisal that documented Plaintiff's absences as "minor" and
"legitimate health related"; (e) a disciplinary final warning without a recipient identified; (f) a
written warning that listed a memorandum written by a retiree/consultant as Plaintiff's first
notification of a grievance regarding her "excessive absences" without defining what was
"excessive" for legitimate health related absences; (g) notes of meetings and deposition
testimony from Plaintiff's managers that documented Plaintiff was told she had FMLA to cover
medical absences; and (h) Company's Associate Relations - Associate Handbook p.35 quote for

Family Medical Leave Act absences – "If you have a serious health condition that qualifies under the FMLA, you are not limited to a particular number of occurrences".

The Plaintiff, a black female, is a member of a protected class. Defendants violated provisions of its own personnel policy when the Defendants permitted the sick policy judgments of a recent retiree/consultant, which Defendants had severely demoted before her retirement, to override the Defendants' provisions. Although Defendants' presentation of documents was misleading, the Defendants' exhibits verified that contradicting sick policies were administered to the Plaintiff. Plaintiff was placed on disciplinary punishment with written reference to attendance disputes that were a year old with a retired prior manager. The Defendants' departure from their standard pattern of management caused Plaintiff: (a) to be placed on a convoluted 90-day progressive disciplinary punishment that administrators, Mike Sisto and Karen Holmes, had difficulty understanding and defining the parameters of the disciplinary terms; (b) to be excluded from participating in a Company program for career advancement; (c) to be denied a promised salary increase; also (d) necessitated a FMLA sick leave for Plaintiff; and (e) led to Plaintiff's ultimate employment termination. The retaliatory termination of Plaintiff's employment occurred nine months after Plaintiff received a probable cause finding against the Defendants for racial and disability discrimination from the Massachusetts Commission Against Discrimination.

The extent of the Defendants' infractions against Plaintiff's personal privacy is stunning. Plaintiff is now in the unenviable state of apprehension because the Defendants exposed her to identity theft and medical insurance theft. Defendants' filings of multiple Summary Judgment pleadings with references to statements in the 2005 Motion for Summary Judgment that exposed Plaintiff's personal data identifiers and confidential medical records, suggest the Defendants elected to ignore the violations of Federal rules and procedures and utilize the document even though the evidence does not validate their statements of fact – e.g., Defendants' inaccurate and distorted quote of Plaintiff clinician's confidential note in Defendants' 17th Statement of

Undisputed Material Fact. An inspection of Defendants' multiple pleadings for Summary Judgment confirms limited effort was used to comply with the Federal Rules of Civil Procedure – Rule 11 and the laws that provide Federal protection for privacy of personal data identifiers and health information. Defendants' exhibits validate the Plaintiff's claims of disability discrimination, racial discrimination, and retaliation under the Americans with Disabilities Act and under Title VII of the United States Code.

WHEREFORE, the Plaintiff respectfully requests the Court to conclude the Defendants have forfeited Civil Action No.: 03-CV-12573-EFH by using the United States District Court for the District of Massachusetts as a vehicle to breach regulations established by all of the judicial custodians that served diligently to ensure the rights of all working citizens are protected.

The Plaintiff respectfully requests that the Court grant Plaintiff: (1) reinstatement of her position with the Defendants; (2) economic damages in the form of lost back pay with cost-of-living salary increases; (3) front pay, employment benefits, medical insurance premiums, identity theft insurance premiums, and other pecuniary losses, together with pre and post-litigation interests, as permitted by law until paid in full; (4) compensatory damages for mental pain and anguish; (5) punitive damages for Plaintiff's long-term anxiety due to identity theft and medical insurance theft exposure; (6) attorney's fees and costs of this action; (7) other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, and (8) such other relief as this Court deems necessary.

Respectfully submitted,

Dated: September 11, 2007

Bernadine T. Griffith, PRO SE
P.O. Box 110
Topsfield, MA 01983-0110
(978) 887-8410

-23-

## CERTIFICATE OF SERVICE

I, Bernadine T. Griffith, hereby certify that on this 11th day of September, 2007, I caused a true and correct copy of the foregoing to be served via Priority Mail upon *Robert P. Morris, Esq. and Keith B. Muntyan, Esq.,* Attorneys for the Defendants; Law Office of Morgan, Brown & Joy; 200 State Street, 11th Floor; Boston, Massachusetts 02109.

Bernadine T. Griffith, PRO SE
P.O. Box 110
Topsfield, MA 01983-0110
(978) 887-8410